CANNON *v.* TRANSAMERICAN FREIGHT LINES

1. PARTIES—DROPPING PARTIES—COURT RULES.

Dismissing all parties plaintiff, except one, on an oral motion made on the date of trial was not error, because parties in an action may be added or dropped by order of the court on motion of any party, at any stage of the action and on such terms as are just (GCR 1963, 207).

2. PLEADING—AMENDMENT—DISCRETION.

Denying a party in an automobile accident suit the right to amend his pleadings to include the suffering borne by decedent prior to his death was not an abuse of discretion where the motion was made when the case came up for trial (GCR 1963, 118.1).

3. TORTS—PRENATAL INJURIES—CHILD'S CAUSE OF ACTION—OHIO LAW.

A child, under Ohio law, has a cause of action for injuries sustained prior to his birth.

4. CONSTITUTIONAL LAW—PARENT AND CHILD—ILLEGITIMATE CHILDREN—EQUAL PROTECTION.

Distinguishing between the rights of children on the basis of their legitimacy or illegitimacy with regard to either parent is an invidious discrimination and runs afoul of the Equal Protection Clause of the Fourteenth Amendment.

REFERENCES FOR POINTS IN HEADNOTES
[1] 59 Am Jur 2d, Parties § 215.
[2] 41 Am Jur, Pleading §§ 288, 292, 296.
[3] Am Jur 2d, Prenatal Injuries (1st ed Torts § 98).
[4] 10 Am Jur 2d, Bastards § 146.
 16 Am Jur 2d, Constitutional Law § 485 *et seq.*
[5] 16 Am Jur 2d, Constitutional Law § 590.
[6] 22 Am Jur 2d, Death §§ 65, 158.

5. Constitutional Law—Full Faith and Credit—Other State's
    Cause of Action—Policy.

> Michigan courts are not bound by the Full Faith and Credit
> Clause of the United States Constitution to recognize a cause
> of action which is permissible in another state, but which runs
> afoul of the public policy of this state; similarly, Michigan
> courts are not bound by the Full Faith and Credit Clause to
> deny a cause of action to a person where such a denial would
> violate the public policy of Michigan.

6. Death—Ohio Wrongful Death Statute—Illegitimate Child—
    Death of Father.

> An illegitimate child, in a suit in Michigan under the Ohio
> wrongful death statute, has a cause of action for the wrongful
> death of its father, and is a proper beneficiary under the cause
> of action brought by the administrator of decedent's estate.

Appeal from Wayne, Thomas Roumell, J. Submitted Division 1 October 7, 1971, at Detroit. (Docket No. 9262.) Decided December 6, 1971.

Complaint by Margie Cannon, for herself and as administratrix of the estate of Arthur O. Cannon, deceased, by James Cannon, and by Gladys Allen, for herself and as natural guardian of Jacqueline Kay Allen against Transamerican Freight Lines for wrongful death. Defendant's motion to dismiss all parties plaintiff except the administratrix of decedent's estate granted and plaintiffs' motion to amend their pleadings denied. Plaintiffs appeal. Reversed and remanded.

*Wilfred C. Rice,* for plaintiffs.

*Vandeveer, Doelle, Garzia, Tonkin & Kerr, P. C.,* for defendant.

Before: Lesinski, C. J., and V. J. Brennan and O'Hara,* JJ.

---

* Former Supreme Court Justice, sitting on the Court of Appeals

V. J. BRENNAN, J.  This is a wrongful death action arising from a car-truck accident which occurred on highway 280 south of Toledo, Ohio, on July 29, 1964.[1]  The deceased, Arthur Odell Cannon, was the passenger in a car driven by Felix Walls; he was a resident of Detroit, Michigan.

The complaint in this case was filed on behalf of Margie Cannon as administratrix of the estate of the decedent; James and Margie Cannon as the parents of decedent; Jacqueline Kay Allen as decedent's posthumous illegitimate child; and Gladys Allen as the intended wife of the deceased.  This suit came to trial as a consolidated case with *Walls* v. *Transamerican* (see footnote 1, *supra*).  Before selection of the jury, defense counsel made a motion to dismiss all parties plaintiff except the administratrix of decedent's estate.  Defendant argued that under the Ohio wrongful death statute[2] the only proper plaintiff is the administratrix of decedent's estate.  The court subsequently granted defendant's motion and at the same time denied plaintiffs' motion to amend their pleadings to include a claim of damages for the pain and suffering decedent endured between the accident and his death.

Plaintiffs appeal these rulings and raise three issues which we shall deal with *ad seriatim*.  Plaintiffs first argue that it was error for the trial judge to dismiss all parties except the administratrix upon an oral motion made on the date of trial since defendant made no attack against the pleadings prior to that time.  We find no error.  "Parties may

by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] The circumstances of this accident are irrelevant to our disposition of this case.  They are fully set forth in our opinion in the companion case of *Walls* v. *Transamerican Freight Lines* (1971), 37 Mich App 307, which arose from the same incident.

[2] The case was tried under the law of Ohio.  No argument regarding the propriety of the application of Ohio law is raised.

be added or dropped by order of the court on motion of any party * * * at any stage of the action and on such terms as are just." GCR 1963, 207.

Plaintiffs also argue that it was unfair of the trial court to refuse to permit plaintiffs to amend their pleadings to include the suffering borne by decedent prior to his death. Such matters rest with the discretion of the trial judge. GCR 1963, 118.1. We do not feel that it was an abuse of discretion to deny the motion given that it was made when the case came up for trial. Upon remand following this decision the circumstances will be changed and the trial judge would again be free to exercise his discretion should a similar motion be made. We note that GCR 1963, 118.1 provides that such motions should be freely granted.

The final assignment of error involves the status of the alleged posthumous illegitimate child of decedent. This argument raises serious constitutional questions which were not briefed by either party, but which, in the interest of justice, we feel compelled to consider.

The Ohio wrongful death act (Ohio Revised Code § 2125.02), under which this suit was brought, provides in pertinent part:

"An action for wrongful death must be brought in the name of the personal representative of the deceased person, but shall be for the exclusive benefit of the surviving spouse, the children, and other next of kin of the decedent."

In order to determine the status of the alleged posthumous illegitimate child of decedent, we must resolve two issues: first, whether, in Ohio, a child may bring suit for injuries which are alleged to have occurred prior to his birth, and, second, whether the fact of the child's illegitimacy will preclude it from recovering for the wrongful death of its father.

Regarding the first issue, the Ohio courts have held that an action may be maintained for the wrongful death of a viable unborn child which is subsequently stillborn as the result of prenatal injuries. *Stidam* v. *Ashmore* (1958), 109 Ohio App 431 (167 NE2d 106). An action will also lie for the wrongful death of a child who died after birth, as a result of prenatal injuries. *Jasinsky* v. *Potts* (1950), 153 Ohio St 529 (92 NE2d 809). Also, an unborn viable child injured by another's negligence, may, after birth, maintain an action for such injury. *Williams* v. *Marion Rapid Transit, Inc.* (1949), 152 Ohio St 114 (87 NE2d 334). It is therefore clear that in Ohio, a child does have a cause of action for injuries sustained prior to his birth.

On the basis of these holdings by the Ohio courts, it is clear that if the child here in question had been a posthumous legitimate child of decedent, he would have been a proper beneficiary under the Ohio wrongful death statute.

Having determined that the fact that the child is posthumous is not a bar to his status as a beneficiary under a wrongful death action in Ohio, we must now consider the second issue: whether the fact of his illegitimacy will bar his recovery under such a suit. In a case directly on point, the Court of Appeals of Ohio determined that the word "children" within the wrongful death statute referred only to legitimate children, and therefore a posthumous illegitimate child was not entitled to participate in an action for the wrongful death of its putative father. *Bonewit* v. *Weber* (1952), 95 Ohio App 428 (120 NE2d 738).

However, the Supreme Court of the United States has recently held that it is a violation of the Equal Protection Clause of the Fourteenth Amendment for a state's wrongful death statute to deny illegiti-

mate children a cause of action for the wrongful death of their mother while granting such an action to legitimate children. *Levy* v. *Louisiana* (1968), 391 US 68 (88 S Ct 1509, 20 L Ed 2d 436). In a companion case the Court also held that it was a denial of equal protection for a state to deny the parents of illegitimate children a cause of action for the wrongful death of such children, while granting parents a cause of action for the wrongful death of legitimate children. *Glona* v. *American Guarantee & Liability Insurance Company* (1968), 391 US 73 (88 S Ct 1515, 20 L Ed 2d 441).

Scarcely one month after these decisions by the United States Supreme Court, the Supreme Court of Ohio ruled that an illegitimate child does not have a right to support from its putative father. In reaching this decision, the Ohio Supreme Court ruled that the *Levy* case was limited to the mother-child relationship, and was therefore inapplicable in a case regarding the rights of an illegitimate child against its putative father. *Baston* v. *Sears* (1968), 15 Ohio St 2d 166 (239 NE2d 62). The majority in that case was a narrow four to three, with the three dissenting justices strenuously arguing that compelling a father to support his legitimate children, while not compelling him to support his illegitimate children, denied equal protection of the laws to such illegitimate children in violation of the Fourteenth Amendment.

Subsequent comments upon, and constructions of, the Supreme Court's decisions in *Levy* and *Glona* lends support to the argument made by the minority in *Baston*. Two subsequent comments on the *Levy* decision by Mr. Justice Douglas, the author of the majority opinions in both *Levy* and *Glona,* and one subsequent comment on the *Levy* decision by Mr.

Justice Marshall make it clear that Mr. Justice Douglas did not intend that those decisions should be read to refer solely to the mother-child relationship, but rather that they should be read to mean that discrimination between children solely on the basis of their legitimacy or illegitimacy is an invidious discrimination and contrary to the Equal Protection Clause of the Fourteenth Amendment. In *King* v. *Smith* (1968), 392 US 309, 336 (88 S Ct 2128, 20 L Ed 2d 1118), Mr. Justice Douglas stated:

"The other day in a comparable situation we held that the Equal Protection Clause of the Fourteenth Amendment barred discrimination against illegitimate children. We held that they cannot be denied a cause of action because they were conceived in 'sin,' that the making of such a disqualification was an invidious discrimination. *Levy* v. *Louisiana* [citation omitted]."

In *Dandridge* v. *Williams* (1970), 397 US 471, 523 (90 S Ct 1153, 25 L Ed 2d 491), Mr. Justice Marshall stated:

"Indeed, governmental discrimination between children on the basis of a factor over which they have no control—the number of their brothers and sisters—bears some resemblance to the classification between legitimate and illegitimate children which we condemned as a violation of the Equal Protection Clause in *Levy* v. *Louisiana*."

Finally, in *United States* v. *Vuitch* (1971), 402 US 62, 78 (91 S Ct 1294; 28 L Ed 2d 601, 613), Mr. Justice Douglas cited *Levy* as applying to "the intimate familial relations between *children and parents*." (Emphasis added.)

Furthermore, the Supreme Court's decision in *Levy* has been cited as authority for the proposition

that an illegitimate child may not be denied a cause of action for the wrongful death of its father merely because it is illegitimate; *Hebert* v. *Petroleum Pipe Inspectors, Inc.* (CA 5, 1968), 396 F2d 237; *Schmoll* v. *Creecy* (1969), 54 NJ 194 (254 A2d 525); and it has also been cited as support for the proposition that to deny an illegitimate child a cause of action for support against its putative father merely because it is illegitimate also violates the Equal Protection Clause; *Munn* v. *Munn* (1969), 168 Colo 76 (450 P2d 68); *R——* v. *R——* (Mo, 1968), 431 SW2d 152; *Storm* v. *None* (1968), 57 Misc 2d 342 (291 NYS2d 515).

We therefore conclude that the interpretation placed upon the *Levy* decision by the Supreme Court of Ohio in *Baston* was erroneous. It is clear, both from the subsequent comments of Mr. Justice Douglas, and from subsequent interpretations of the *Levy* decision by other courts, that the United States Supreme Court's decision in that case is not limited to the rights of illegitimates in relation to their mother, but rather stands for the proposition that distinguishing between the rights of children on the basis of their legitimacy or illegitimacy with regard to either parent is an invidious discrimination and runs afoul of the Equal Protection Clause of the Fourteenth Amendment. We are of the opinion that had this case arisen in the courts of Ohio, the courts of that state would have decided not to follow the rule of the *Baston* case, and would grant the illegitimate child a cause of action for support against its putative father, and by the same token a cause of action for the wrongful death of its putative father.

However, such a conclusion does not form an essential part of our decision here. The courts of

this state are not bound by the Full Faith and Credit Clause of the United States Constitution to recognize a cause of action which is permissible in another state, but which runs afoul of the public policy of this state. *Kircher* v. *Kircher* (1939), 288 Mich 669. By the same token we would not be bound to deny a cause of action to an individual where such a denial would violate the public policy of this state. We feel that to deny an illegitimate child a cause of action for the wrongful death of its father where a legitimate child is granted such a cause of action does violate the public policy of the State of Michigan. Furthermore, while we are bound to accept the interpretation another state places upon its statutes, we are not bound to accept that state's interpretation of the United States Constitution. Pursuant to the Supremacy Clause of the United States Constitution, we could not enforce a foreign statute in a manner which would violate the United States Constitution. We feel the denial of a cause of action to an illegitimate child for the wrongful death of its father, on the basis of the child's illegitimacy, violates the Equal Protection Clause of the Fourteenth Amendment. We therefore rule that in suits in this state under the Ohio wrongful death statute, an illegitimate child does have a cause of action for the wrongful death of its father, and is therefore a proper beneficiary under the cause of action brought by the administrator of decedent's estate.

Since both the child's mother and its putative father were residents of this state, we further hold that the paternity of the child should be established according to the laws of Michigan.

Reversed and remanded.

All concurred.