HEATHER, Dependent child of Bryan,
Deceased,* Appellant (Claim-
ant below),

v.

DELTA DRILLING COMPANY, Appellee
(Respondent below).

No. 4459.

Supreme Court of Wyoming.

April 15, 1975.

Rehearing Denied May 13, 1975.

Donald L. Painter, Casper, for appellant.

James W. Owens of Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellee.

Before GUTHRIE, C. J., RAPER and THOMAS, JJ.

* In order to avoid embarrassment to the mother, child and family of the deceased, the full names of the appellant and her deceased father have been omitted, but appear in the files of this court and the district court.

RAPER, Justice.

"The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust." Weber v. Aetna Casualty & Surety Company, 1972, 406 U.S. 164, 175, 92 S.Ct. 1400, 1406, 31 L.Ed.2d 768. Thus, we must reopen and reexamine the judicial treatment of the illegitimate child in the application of Wyoming's workmen's compensation laws.[1]

Heather, the appellant, is admitted by appellee to be the illegitimate child of Bryan. When she was only a few months old, her father was killed instantly while employed by the employer-appellee. She has claimed benefits as the dependent child of the deceased workman and the claim was disapproved by the employer. The trial judge held that the status of illegitimacy deprived Heather of any entitlement to death benefits under § 27–89, W.S.1957, C.1967.[2]

 In re Dragoni, 1938, 53 Wyo. 143, 156, 79 P.2d 465, 468, very positively held that the word "children," as used in the workmen's compensation act with respect to awarding compensation in their favor for death or injury to parent means "legitimate children" and illegitimate children are not entitled to benefits under the workmen's compensation law of Wyoming.[3] We must set aside Dragoni on that issue for the reason that its interpretation establishes a discriminatory classification which is justified by no legitimate state interest and violates the equal protection clause of the Fourteenth Amendment to the constitution of the United States. Weber,[4] in arriving at this conclusion, while dealing with Louisiana's workmen's compensation law and by which we are similarly bound, went on to say:

"'* * * It would, indeed be far-fetched to assume that women have illegitimate children so that they can be compensated in damages for their [fathers'] death.' [Citing case.]

1. This opinion will deal only in the area of the workmen's compensation law but discrimination on the basis of illegitimacy as a denial of constitutional rights has extended into other areas. See Anno., 38 A.L.R.3d 613.

2. "If said workman leaves surviving children under eighteen (18) years of age, there shall be credited to the account of each of said children a lump sum equivalent to thirty dollars ($30.00) per month until the time when each of said children would become eighteen (18) years of age; provided that the lump sum credited to the account of all of said children shall in no case exceed ten thousand dollars ($10,000.00), excepting the unpaid balance of an award to a surviving spouse who has remarried or died shall not be considered as a part of said aggregate lump sum; and provided further that the amount credited to the account of each child shall be held by the state treasurer and disbursed for the use and benefit of such child only upon proper order by any district court within the State of Wyoming. In case of the death of any such children, the portion of such award payable to such child by the terms hereof shall be divided among the surviving children pro rata; provided further, that if all the said children should die before the unpaid balance of the

award is entirely distributed, then the remaining undistributed portion of such award shall revert to the industrial accident fund and be credited and apportioned to the respective fund or funds from which said award of compensation was withdrawn."

3. Appellee also cited Smith v. National Tank Co., Wyo.1960, 350 P.2d 539, as authority for the proposition that illegitimate children are not under any theory, potential beneficiaries under the compensation laws of Wyoming. However, the facts of that case are nothing like the facts of our case here. In Smith, the employee's wife made claim for benefits for her daughter, sired by a stranger to the marriage, conceived and born while the deceased workman was incarcerated and never supported by him. The question we have in the case now before us is whether or not the illegitimate child of a deceased workman is entitled to benefits. The basis for that decision was that "Eleanor's child was the result of her adulterous relation with another man. To award compensation for her child would be to forget, forgive and, in fact, put a premium upon, adultery." We do not disturb the holding of Smith.

4. 406 U.S. 173, 92 S.Ct. 1405, 31 L.Ed.2d 777–778.

"Nor can it be thought here that persons will shun illicit relations because the offspring may not one day reap the benefits of workmen's compensation." [5]

Illegitimate and legitimate children are now entitled to the same treatment without regard to their legitimacy, under the workmen's compensation law.

Having decided that an illegitimate child of an employee is entitled to the same consideration as a legitimate child of an employee under the workmen's compensation laws of Wyoming, we move to a consideration of the second question raised in this appeal. Is the child of the deceased workman entitled to benefits even though she was never actually furnished any specific financial or other support by her father, as she admits?

While we are elevating the status of the illegitimate child to that of the legitimate child, we are not approving the life style of those responsible for bringing such children into the world. An abnormal and generally unsatisfactory family relationship is created, lacking stability and guidance for the youngster. Our sole interest is in protecting the child of the union in only this one particular before us.

The specific statutory provisions controlling the answer to the question are found in § 27-49(II), W.S.1957, C.1967:

"(d) *'Dependent families'* means the spouse, or children under eighteen (18) years of age of the workmen who are wholly or in part actually dependent upon the workman for support at the time of the injury, * * *

"(e) *'Child or children'* means the immediate offspring, stepchild or stepchildren or legally adopted child or children of the injured workman, under eighteen (18) years of age or under twenty-one (21) years of age (if physically or mentally incapacitated from earning) and shall also include legitimate children of the injured workman born after his death or injury. In other cases, questions of family dependency in whole or in part shall be determined in accordance with the fact, as the case may be, at the time of the injury, * * * " [6]

 Appellee-employer argues that the trial judge correctly decided that since

---

5. 2 Larson, The Law of Workmen's Compensation, § 62.22, p. 11-35 (Rel.No.17-1974) reconstructs the crucial episode referred to, more melodramatically:

"On a summer night, under a full moon, in a secluded Louisiana bayou, Marvin and Julia are about to embark upon a meretricious relationship. Suddenly Julia thrusts Marvin away.

"*Julia:* 'No, Marvin, No—we mustn't.'

"*Marvin:* (perplexed and slightly angry) 'But why, why, why? What's the matter?'

"*Julia:* 'I just remembered that under Stokes v. Aetna Casualty & Surety Company, if we should have an illegitimate child because of this meretricious conduct, and if you should get killed in an industrial accident before the child was born, this posthumous illegitimate offspring would be subordinated to your legitimate children in any claim for workmen's compensation dependency benefits.'

*Marvin:* . . .

"At this point the author, not being a dramatist, is at a loss how to continue the colloquy—at least if the time were pre-1972.

After 1972, Marvin's response is obvious.

"*Marvin:* (chuckling with relief) 'Oh, is that all? Well, it might interest you to know that *Stokes* was reversed by the Supreme Court of the United States in Weber v. Aetna Casualty and Surety Company (Justice Rehnquist dissenting), and that any discrimination against illegitimates in workmen's compensation dependency benefits is now forbidden as a violation of the Equal Protection Clause of the Fourteenth Amendment.'

"*Julia:* 'Well, in that case . . . '

"(Slow Curtain)"

6. The balance of the subsection goes on to say:

" * * * the foregoing definition of 'dependent families' shall not include any of the persons named, who are aliens residing beyond the jurisdiction of the United States of America, except a surviving widow or a child or children under eighteen (18) years of age, or parent or parents, and as to such non-resident aliens the rate of compensation shall not exceed thirty-three and one-third per cent (33⅓%) of the rates of compensation herein provided;"

no support had been actually received by Heather in the shape of money, payment of doctor or hospital bills at the time of birth, or contribution by food or otherwise, she failed the test of dependency set out in 2 Larson, The Law of Workmen's Compensation, § 63.00, p. 11–58.[7] We disagree and hold that § 27–49(II)(e) grants a conclusive presumption of dependency to a child of the covered workman. This is a new guideline in Wyoming jurisprudence, though possibly practiced administratively, thereby not previously bringing the matter before the courts.

A careful, analytical and thoughtful study of the foregoing statutory definition of "a child or children" in § 27–49(II)(e) calls to our attention that after the definition in the first sentence, the second sentence qualifies the first by saying, *"In other cases,* questions of family dependency in whole or in part shall be determined in accordance with the fact, as the case may be, at the time of the injury; * * *"* (Emphasis supplied.) To tell it differently but with and in the same sense, the subsection is saying, "Except in the case of a child or children, questions of family dependency, in whole or in part, shall be determined in accordance with the fact, as the case may be, at the time of the injury." The conclusive presumption of dependency is thereby fixed and it is unnecessary to explore any effect of § 27–49(II)(d).

This becomes more apparent when we look into the history of this phase of the workmen's compensation law. By chapter 79, Session Laws of Wyoming, 1913, the legislature passed, "AN ACT to submit to the qualified voters of the State of Wyoming an amendment to the Constitution of the State of Wyoming adding to Section 4 of Article 10 of the Constitution a provision authorizing and requiring Workmen's Compensation Acts." By vote of the people, the proposed amendment was ratified on November 3, 1914, and proclaimed in effect December 26, 1914. Records of the Secretary of State. The authority for our workmen's compensation law as a result of the amendment is now found in § 4 of Art. X of the Wyoming constitution, wherein the following pertinent provision appears:

"* * * As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. * * *"

By chapter 124, Session Laws of Wyoming, 1915, our workmen's compensation law came into being. Subsections 6(j) and (k) [8] contained essentially the same lan-

---

7. "Dependency in fact must be established in order to qualify for death benefits in all cases except those involving a conclusive presumption of dependency. Proof of actual dependency does not require a showing that the claimant relied on the deceased for the bare necessities of life and without his contribution would have been reduced to destitution; it is sufficient to show that the deceased's contributions were looked to by claimant for the maintenance of claimant's accustomed standard of living. Hence a claimant may be dependent although receiving other income from claimant's own work, from property or from other persons on whom claimant is also dependent. Usually, actual contribution to claimant's support is enough to establish dependency without evidence of legal obligation

to support. Proof of bare legal obligation to support, unaccompanied by either actual support or reasonble expectation of support, is ordinarily not enough to satisfy the requirement of actual dependency. Under the general principle that morality is not an inherent ingredient of dependency, a statute based on dependency in fact is none the less satisfied when actual dependency accompanies unconventional domestic arrangments."

8. "(j) 'Dependent families' as used in this Act means such members of the workman's family, as were wholly or in part dependent upon the workman for support at the time of the injury and shall include widow or husband, as the case may be, and children, or if no widow, husband or children, the parents

guage as subsections 27–49(II)(d) and (e) now in effect.

But from what did Wyoming model its act? We find quite a number of other contemporary state workmen's compensation laws with respect to dependency that carry marks of being a source for the particular sections in which we are interested; it is impossible to determine its exact origin. Notice many of the same words and phrases and their arrangement, for example, out of Massachusetts, L.1911, C. 751:

> " 'Part II, § 7. The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employe:
>
> \* \* \* \* \* \*
>
> " '(c) A child or children under the age of eighteen years (or over said age, but physically or mentally incapacitated from earning) \* \* \*
>
> " 'In all other cases questions of dependency, in whole or in part, shall be determined in accordance with the fact, as the fact may be at the time of the injury; \* \* \*' " 9

Wyoming could have used this as a sample and mutilated it but it is still capable of identification and failed to lose its vigor in spite of parts that were hacked out and rearranged.

■ Under quite a number of decisions in states having statutes practically like that of Wyoming or the law of origin, whatever it might have been, where children under a particular age are conclusively presumed dependents, there is no necessity to prove any actual dependency and the right to recover is fixed.10 We hold that to be the rule in Wyoming.

Such a presumption is founded on reason, is the result of common observation and follows from experience. As said in Gulf States Steel Co. v. Griffin, supra: (P. 128 of 214 Ala., p. 900 of 106 So.)

> " \* \* \* children under the age of 16 are not acquainted with or capacitated to compete with the necessities of life or the customs and requirements of business and social conditions, and are not acquainted with the laws protecting their rights and governing the family relations. \* \* \* "

■ It further makes good logic for the workmen's compensation law to ensure support to those normally entitled to parental maintenance because there is an obligation of support that rests upon a father of either illegitimate or legitimate children and the courts have not hesitated to make reference to that obligation in approving the award, without reference to what actual support was being given at the time of

---

of the injured workman, if actually dependent upon him for support at the time of the injury; \* \* \*

"(k) 'Child or children' means such that are under sixteen (16) years of age (and over said age, if physically or mentally incapacitated from earning) and shall also include legitimate children of the injured workman born after his death from injury. In other cases questions of family dependency in whole or in part shall be determined in accordance with the fact, as the case may be at the time of injury; the foregoing definition of 'dependent families' shall not include any of the persons named, who are aliens residing beyond the jurisdiction of the United States of America, except a surviving widow, or children under sixteen (16) years of age and as to such non-resident aliens the rate of compensation shall not exceed twenty-five per cent (25%) of the rates of compensation herein provided."

9. Taken from Bradbury's Workmen's Compensation and State Insurance Law, 1912, p. 326. In the same work it is shown that California, 1911, p. 324, Michigan, 1912, p. 327, Rhode Island, 1912, p. 329, and Wisconsin, 1911, p. 331, also had identical provisions.

10. Day v. Town Club, 1950, 241 Iowa 1264, 45 N.W.2d 222; Morris v. Glen Alden Coal Co., 1939, 136 Pa.Super. 132, 7 A.2d 126; Armour and Company v. Strickland, Okl. 1966, 413 P.2d 320; Atkinson v. Atkinson, 1933, 47 Ga.App. 345, 170 S.E. 527; Larson v. Independent School District No. 11J of King Hill, 1933, 53 Idaho 49, 22 P.2d 299; Pruden Coal & Coke Co. v. Johnson, 1932, 167 Tenn. 358, 53 S.W.2d 384; Gulf States Steel Co. v. Griffin, 1926, 214 Ala. 126, 106 So. 898; State v. District Court of Hennepin County, 1919, 143 Minn. 144, 172 N.W. 897; and Holmberg's Case, 1918, 231 Mass. 144, 120 N.E. 353.

the injury. The legislature has manifested the public policy of this State. Wyoming has the Uniform Illegitimacy Act, § 14–59 et seq., W.S.1957, C.1965, by which the obligation of support may be enforced not only by the mother but by the child, through its guardian or next friend, or by public authorities. Failure to support an illegitimate child is a crime, punishable by fine and jail sentence. §§ 14–87, 88. Since the mother and child were in Colorado and the father was in Wyoming, the Revised Uniform Reciprocal Enforcement of Support Act was available to enforce support. § 20–105 et seq., W.S.1957, 1973 Cum.Supp. It is a felony for a parent, without just cause, to fail or refuse " * * * to provide adequately for the care, support and maintenance of his child * * * under the age of 18 years." § 20–71, W.S.1957, 1973 Cum.Supp. A separate civil action for support is authorized by § 14–18, W.S.1957, C.1965.

The deposition of the mother discloses that the father of this child was honorable to the extent that he admired and visited the little girl and took pride in claiming her as his. He was a very young man, going to college under the G.I. Bill, at the time of the conception. The mother was convinced that "he couldn't afford to do anything." The youngster was born in May and her father was killed instantly in November of the same year by being hit on the head by a fitting under pressure blown from an oil drilling rig. The probability of collecting support was good, if ever undertaken on behalf of the child. An infant of tender years should not be robbed of whatever rights might arise as a result of its relationship with its parents. The courts go far to bestow their compassion upon children.

In McGarry v. Industrial Commission of Utah, 1925, 64 Utah 592, 232 P. 1090, 39 A.L.R. 306, the father of a minor had furnished no support to his son after the latter was about six months old and his wife obtained a divorce, giving her the custody and maintenance of the child. The court observed that:

" * * * The child was only 3 or 4 years of age at the most when its father entirely abandoned it and its mother. Human experience teaches us that a child of that age, or even of the age it is now, is practically helpless, and lexicographers of the English language generally give to the word 'dependent' a definition which covers and includes a helpless infant. The Industrial Act of Utah does not state the circumstances and conditions under which an actual dependency may be established. It does not make acutal dependency depend upon some support furnished the applicant by deceased down to a recent date, nor has any respectable authority had the temerity to so interpret industrial acts unless the act itself prescribed such limitation, as in most of the states of the Union. * * *"

In the same case, a concurring judge stated:

" * * * To hold that a mere infant, only 7 years of age when it makes its application, is not a dependent because it did not take some steps to enforce its father's legal duty in his lifetime, or because its father did not contribute or promise to contribute to its support down to within a recent date, where there is no positive law making such element an essential factor in such case, is well-nigh shocking to the judicial conscience. The fact that the mother of the child may have had the opportunity to attempt the enforcement of the father's duty when she knew of his whereabouts during the first 4 years of the child's life and failed to do so, certainly should not be assigned as a reason for annulling the award allowing the child compensation. * * *"

In Ocean Accident & Guarantee Corporation v. Industrial Commission of Arizona, 1928, 34 Ariz. 175, 269 P. 77, the deceased workman was divorced from his wife and ordered to pay $75 per month for the support of his children. He moved away and ignored the obligation of support. The claim was made that the children were at the time of their father's

death totally dependent upon their stepfather and thus could not be dependent upon their natural father. The court observed that at no time did the minor children or their mother release the father from his obligation to support them. The court held that under such circumstances the children are dependent upon him for support and entitled to workmen's compensation benefits.

In Borgmeier v. Jasper, Mo.App.1934, 67 S.W.2d 791, the claimant was born at a time when her parents were living apart. When she was about one year of age, her parents were reconciled and they lived together for several months, when a second final separation occurred, without there ever being a divorce. Claimant never lived under the same roof with her father and she was supported entirely by her mother and her relatives, other than a $10 or $12 contribution. The daughter had no independent means of her own and had never earned anything on her own account. Missouri had a statute in which there would have been a presumption of dependency if the child had been living with her father at the time of his death. It was there said:

" * * * Clearly claimant was dependent upon some one, her circumstances being such that she was in no wise self-sustaining; and in so far as the question of legal dependency is involved, it was her father upon whom she was dependent, he being the one person legally liable for her support. * * * "

After favorably citing a case, the opinion went on to say:

" * * * it was held not to be absolutely essential upon the issue of dependency to show that the deceased parent had actually contributed to his child's needs during the parent's lifetime. Rather it was held to satisfy the requirements of due proof to show that there was some reasonable probability that the deceased father's legal duty would thereafter have been fulfilled by him."

Webster defines dependent as lacking the necessary means of support and receiving aid from others. The fact that such reliance is misplaced, or that such other might fail or be unable in his duty in the premises, would not and should not make a dependent non-dependent. The dependency exists whether it is recognized or not by him who owes the duty to support. To say that a child is not dependent upon her father because he fails or is unable to support her and she is obliged to appeal to the charity of others is to permit his conduct to determine the fact, rather than the justice and right of the case as well as the law. A little baby is not capable of supporting itself and not competent either to claim or waive a right under the law. Such a child upon her father's death, within the boundaries of the Wyoming Workmen's Compensation Act, becomes an actual dependent without regard to the question whether she has received or had any promise of support or must speculate in that regard, in whole or in part. A child must not be left unattended to spite normal human concupiscence.

The motion for summary judgment by the employer should have been overruled.

Reversed and remanded with directions to the trial court to vacate the summary judgment and set the matter for hearing on issues remaining, if there are any, and final disposition.