Linda **JORDAN**, Personal Representative
and Administratrix of the Estate of Bryan,* Deceased, Appellant (Plaintiff below),

v.

**DELTA DRILLING COMPANY,** a corporation, et al., Appellees (Defendants below).

No. 4498.

Supreme Court of Wyoming.

Oct. 7, 1975.

---

* In order to avoid embarrassment to the mother, child and family of the deceased, the full names of the decedent and his child have been omitted from the title and the opinion but appear in the files of this court and the district court.

Mayne W. Miller, Casper, for appellant.

R. R. Bostwick and James W. Owens, Murane, Bostwick, McDaniel, Scott, Greenlee & Owens, Casper, for appellees, Delta Drilling Co., Claude Womack and Arthur H. Cadwallader.

Richard E. Day, Wehrli & Williams, Casper, for appellee, Cameron Ironworks, Inc.

Before McCLINTOCK, RAPER and ROSE, JJ.

RAPER, Justice.

In *Heather v. Delta Drilling Co.*, Wyo. 1975, 533 P.2d 1211, we held that precluding illegitimate children from receiving benefits under the Workmen's Compensation Act in its then form was a discriminatory classification which was justified by no legitimate state interest and violated the equal protection clause of the Fourteenth Amendment to the Constitution of the United States. The appeal before us involves the same illegitimate child, through her deceased father's personal representative, seeking damages in a wrongful death action and the question of her equality in this different posture is again raised. There are other issues which we shall meet as we come to them.

Bryan was killed on November 24, 1973, while employed by the defendant-appellee drilling company as a derrick hand on a rotary drilling rig. According to the complaint filed, he was working under the immediate supervision of a driller, defendant-appellee Cadwallader, who, in turn, was under the supervision of a tool pusher, defendant-appellee Womack, also employees of the defendant drilling company. The complaint further states that acting upon instructions from Cadwallader, Bryan closed a valve in a line of pipe for the purpose of isolating a pump on which there was a leaking relief value. The plaintiff alleges that the valve which Bryan closed was defective, it being manufactured and distributed by the defendant-appellee, Cameron Ironworks, Inc. It is contended by the plaintiff that in uncoupling a union, as instructed, due to the failure of the defendants to provide a pressure gauge and ignoring other safety precautions, the union broke and the pipe fitting whipped around and struck Bryan in the side of the head, causing his death.

The defendant, Delta Drilling Company, is charged with a willful disregard for the safety of its employee, Bryan; the defendants, Womack and Cadwallader, fellow employees, are accused of negligence; and, the defendant, Cameron Ironworks, Inc., is blamed with manufacturing and selling a defective and dangerous valve and breach of implied warranty. These acts of the defendants are asserted to be the causes of Bryan's death.

The plaintiff-appellant was appointed, qualified and is the acting administratrix of the estate of Bryan, and as his personal representative, brought this action for his wrongful death under § 1–1065, W.S.1957. The defendant left surviving him an illegitimate child, Heather, for whom damages are sought. The parents of Bryan have been included as claimants in the alternative if Heather should be precluded from recovery because of her illegitimacy.

The parties agreed that Heather is the illegitimate child of the decedent. Summary judgment was entered by the trial court for all defendants on the ground that an illegitimate child is not an heir and therefore is barred by the intestacy laws of Wyoming and there could be no recovery against Delta because the workmen's compensation laws of Wyoming afford an exclusive remedy. The plaintiff appealed from the order granting summary judgment to Womack and Cadwallader; they are, in fact, not mentioned in the order but they are parties to this appeal and argue as though summary judgment had been granted in their favor, as does plaintiff. We conclude that through inadvertence they were omitted from the order granting summary judgment and the trial court did so hold in their favor.

There are three issues in the appeal:

1. Does illegitimacy bar recovery in Wyoming under the circumstances of this case, for wrongful death?

2. Do Wyoming's workmen's compensation laws bar a wrongful death action against Delta for willful acts of negligence?

3. Are fellow employees included with their employer if Delta is insulated from a wrongful death action under the facts we have here for consideration?

In 1973,[1] § 1–1066, W.S.1957, 1975 Cum. Supp., was amended and now provides as follows:

"(a) Every action under section 1–1065[2] of the statutes shall be brought by, and in the name of, the personal representative of the deceased person.

"(b) If the deceased left a husband, wife, child, father, or mother, no debt of the deceased may be satisfied out of the proceeds of any judgment obtained in any action brought under the provisions of this section.

"(c) The court or jury, as the case may be, in every such action may award such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person[3] for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort.

---

1. Section 1, Chap. 39, S.L.Wyo.1973.
2. Section 1–1065, W.S.1957, still in effect, is as follows:
   "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable in an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter. Provided, that in the event of the death of the person so liable, such action may be brought against the executor or administrator of his estate; provided further, that if he left no estate within the State of Wyoming, the court may appoint an administrator upon application being made therefor."

3. Note these words, "every person" and compare them to § 1, Amendment XIV of the Constitution of the United States: " * * * No State shall * * * deny to *any person* within its jurisdiction the equal protection of the laws." (Emphasis supplied.)

"(d) Every such action shall be commenced within two years after the death of such deceased person."

This amendment omitted any reference to distribution of the proceeds to survivors under the law of this state with respect to the estates of those persons dying intestate and did not restrict the action to heirs of the decedent as the original act did.[4]

This is a case of first impression in Wyoming because the legislature has apparently departed from the concept that the action is initiated only for the benefit of heirs of the decedent under the rules of intestacy pertaining to descent and distribution.[5] The appellees tell us that even now to hold otherwise would leave no provisions as to persons who could bring an action under the wrongful death statute and that it would be unreasonable that anyone but an heir could be considered within the term "every person." To hold otherwise, claim the defendants, would certainly create an unwise and intolerable situation. Right now, we are only concerned with the right of an illegitimate child to proceed as a "person." We are not prepared to say what other classifications might be included, such as collateral relatives, stepchildren or partners of a decedent but we visualize, without invitation, that imaginative and innovative claims will be made under this amended version of the wrongful death law of Wyoming.

We see no mandate from the legislature that because an administrator is appointed that this means only heirs may be beneficiaries to the proceeds derived as a result of the action. The administrator acts but in the capacity of a trustee. *Coliseum Motor Co. v. Hester,* 1931, 43 Wyo. 298, 3 P.2d 105. The Wyoming statute authorizing wrongful death actions is part of the civil code of this state and not a part of the probate code. The designation of an administrator is no more than a statutory device to provide a party for a civil action to collect damages and pay them over to the persons entitled.[6] As said in *Ashley v. Read Construction Co.,* D.C.Wyo., 1961, 195 F.Supp. 727, 729, "We must not confuse an administrator acting as a personal representative with an administrator of an estate whose duties and powers are set out in Section 2–142, Wyoming Statutes 1957, et seq. * * *" The amount of recovery does not become a part of the decedent's estate. *Tuttle v. Short,* 1930, 42 Wyo. 1, 18, 288 P. 524, 529, 70 A.L.R. 106, 112. This is true even though the administrator or executor must bring the action. *Bircher v. Foster,* Wyo.1963, 378 P.2d 901, 902.

Nor can we say that the language of § 1–1066(b) requires distribution under the laws of intestacy. It states only that when a decedent leaves a husband, wife, child, father or mother, any wrongful

---

4. Section 1–1066, W.S.1957, before amendment, was in this language:
   "Every action shall be brought by, and in the name of, the personal representative of such deceased person; and the amount received in every such action shall be distributed to the parties and in the proportions provided by law, in relation to the distribution of personal estates left by persons dying intestate. In every such case, the jury shall give such damages as they deem fair and just. The court or jury may consider, as elements of damages, the amount the survivors failed or will fail, by reason of the death, to receive out of the decedent's earnings, any other pecuniary loss directly and proximately sustained by the survivors by reason of such death including funeral expenses, and further the court or jury may add, as an element of damage, a reasonable sum for the loss of the comfort, care, advice and society of the decedent. The amount so recovered shall not be subject to any debts or liabilities of the deceased; provided, that every such action shall be commenced within two (2) years after the death of such deceased person."

5. Section 2–37, W.S.1957.

6. We commend to reading, "Probate Jurisdiction in Wrongful Death Actions," 2 Wyo. L.J. 109, written by the Honorable V. J. Tidball, who, for many years, was a judge of the district court, Second Judicial District, Wyoming.

death action recovery shall not be liable for any debts of the deceased. The qualifications of the person for whom recovery is sought are those which may establish to the jury an entitlement to a fair and just award of damages. No more. We cannot amend the law to add more than what is clearly said and enlarge, stretch, expand or extend a statute to matters not falling within its express provisions. *Lo Sasso v. Braun*, Wyo.1963, 386 P.2d 630, 632. The legislature, by amendment deleting any reference to the laws of distribution of a decedent's estate, has eliminated any question of a relationship between heirship and entitlement to damages. Generally, when the legislature, by amendment, has deleted an express provision of a statute, the presumption is that a change was intended. *Stolldorf v. Stolldorf*, Wyo.1963, 384 P.2d 969, 972.

Since a wrongful death action is not a probate matter and bears no relationship to any rule of descent, we consider inapplicable *Labine v. Vincent*, 1971, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288, reh. den. 402 U.S. 990, 91 S.Ct. 1672, 29 L.Ed.2d 156, cited by appellees, wherein the Supreme Court of the United States held that the state's statutory scheme, barring an illegitimate child who had been acknowledged but not legitimated from sharing equally with legitimate heirs in the father's estate, had a rational basis in view of the state's interest in promoting family life and of directing the disposition of property left within the state, and such statutory scheme did not constitute an invidious discrimination against illegitimate children in violation of the due process and equal protection clauses. Justice Harlan, in a concurring opinion, stated that there was no denial of equal protection in the constitutional sense, since it was reasonable for the state to provide that a man who entered into a marital relationship thereby undertook obligations to any resulting offspring beyond those which he owed to the products of a casual liaison, whether or not he admitted fatherhood in the latter case.

We do not have before us a question of an illegitimate child competing for a share of a deceased father's estate in the sense that she wants part of his worldly goods and realty, accumulated during his lifetime. This suit seeks recovery for a wrong committed by a third party taking her father's life and allegedly directly damaging this child and her future. We make no holding in this case that should be construed as affecting one way or the other the right of an illegitimate child to inherit from his or her parent.

Since we do not equate the nature of this action to inheritance, we consider inapplicable, § 2–44, W.S.1957, requiring intermarriage and subsequent recognition by the father as a prerequisite to inherit.[7] For the same reason, § 14–64, W.S.1957, making recognition of the illegitimate child during his lifetime a prerequisite to recovery of support out of the deceased father's estate, is also inapplicable.[8]

7. Section 2–44, W.S.1957, is in full as follows:
   "Illegitimate children shall inherit the same as those born in wedlock, if the parents subsequently intermarry, and such children be recognized after such intermarriage by the father, to be his illegitimate children; otherwise, such children shall inherit from the mother and the mother from the children".

8. Section 14–64, W.S.1957, is in the following language:
   "The obligation of the father where his paternity has been judicially established in his life time, or has been acknowledged by him in writing or by the part performance of his obligations, is enforceable against his estate in such an amount as the court may determine, having regard to the age of the child, the ability of the mother to support it, the amount of property left by the father, the number, age, and financial condition of the lawful issue, if any, and the rights of the widow, if any.
   "The court may direct the discharge of the obligation by periodical payments or by the payment of a lump sum."

In a very short opinion, *Levy v. Louisiana*, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436, reh. den. 393 U.S. 898, 89 S. Ct. 65, 21 L.Ed.2d 185, it was held that since the illegitimacy of the children's birth had no rational relation to the nature of the wrong allegedly inflicted upon their mother by the defendants and since it was invidious to discriminate against children when no action, conduct, or demeanor of theirs was possibly relevant to the harm that was done their mother, the equal protection clause of the Fourteenth Amendment was violated by denying them the right to maintain an action for their mother's wrongful death. In *Glona v. American Guarantee and Liability Insurance Co.*, 1968, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed. 2d 441, reh. den. 393 U.S. 898, 89 S.Ct. 66, 21 L.Ed.2d 185, it was held where the plaintiff in a wrongful death action is plainly the mother of the decedent, the state denies equal protection of the laws by withholding relief merely because the plaintiff's child, though wrongfully killed, was born to the plaintiff out of wedlock. These two cases have rather consistently been cited as authority for the proposition that an illegitimate child may recover damages in a wrongful death action for the death of child's father.[9]

In Texas, the father had no obligation to support his illegitimate child but the Supreme Court of the United States changed that in *Gomez v. Perez*, 1973, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56, where it was held that despite the appellant's apparent failure to explicitly draw attention to the individual statutes which made up the so-called Texas rule regarding the support of legitimate and illegitimate children, the appellant's claim that her child had been denied equal protection of the law was properly presented to the Supreme Court, and the denial, under Texas law, of an illegitimate child's right to support from the child's natural father violated the equal protection clause of the Fourteenth Amendment. The court cited *Weber v. Aetna Casualty & Surety Co.*, 1972, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768,[10] as well as *Levy v. Louisiana, supra,* in arriving at this decision. The court noted as follows, 409 U.S. at 538, 93 S.Ct. at 875, 35 L.Ed.2d at 60:

" * * * We recognize the lurking problems with respect to proof of paternity. Those problems are not to be lightly brushed aside, but neither can they be made into an impenetrable barrier that works to shield otherwise invidious discrimination. [Citing cases.]"

This array of United States Supreme Court cases leads us to the unassailable conclusion that an illegitimate child is on an equal basis with the legitimate child and is a person entitled to claim benefits under Wyoming's wrongful death statutes.

The leading state supreme court case, as we see it, is *Schmoll v. Creecy*, 1969, 54 N.J. 194, 254 A.2d 525, 38 A.L.R.3d 605, the principal question there being whether illegitimate children may recover damages

---

9. There are cases contra. In *Sanders v. Tillman*, Miss.1971, 245 So.2d 198, the court strictly viewed *Levy* as applying to the mother's death only. To a similar effect is a case cited by appellees, *Baston v. Sears*, 1968, 15 Ohio St.2d 166, 440 Ohio Op.2d 144, 239 N.E.2d 62, but that court was dealing with a live father and held that an illegitimate child had no rights of support from the father where the father does not marry the mother and the mother marries another man after the child's birth. The case does not deal with the wrong of another and represents an extremely narrow view. The case is not in point. Besides that, the case has been overruled by the Ohio supreme court in *Franklin v. Julian*, 1972, 30 Ohio St.2d 228, 59 Ohio Op.2d 264, 283 N.E.2d 813, footnote 5. Neither *Steed v. Imperial Airlines*, 1974, 12 Cal. 3d 115, 115 Cal.Rptr. 329, 524 P.2d 801, app. den. 420 U.S. 916, 95 S.Ct. 1108, 43 L.Ed.2d 387, or *Krantz v. Harris*, 1968, 40 Wis.2d 709, 162 N.W.2d 628, cited by appellees, are in point because they both involve wrongful death statutes in which recovery is limited to heirs of the decedent and thus there may be some justification for relating recovery to that class of persons. The Wyoming statute no longer refers to the laws of intestacy and the estates of decedents.

10. This case was the principal basis for our opinion in *Heather v. Delta Drilling Co.*, *supra*.

for the wrongful death of their natural father. Upon the basis of the authority of *Levy v. Louisiana, supra,* and *Glona v. American Guarantee and Liability Insurance, Co., supra,* the supreme court of New Jersey held that the state's wrongful death statute, with respect to the rights of children, was incompatible with the equal protection clause if it excluded the right of recovery by illegitimate children.

As here, it was argued to the New Jersey supreme court that the case before us is different because (1) our death act is related in terms to a statute dealing with the devolution of property and *Levy* and *Glona* do not touch that topic, and (2) those cases deal only with the relation of an illegitimate child and its mother. The court said, with respect to point (1), in 54 N.J. at 199–200, 254 A.2d at 528:

> "The first proposition may be disposed of quickly. There are of course differences between a wrongful death statute and an inheritance statute. A wrongful death statute itself determines who shall benefit, and the decedent has no voice in the matter. On the other hand, an inheritance statute embodies no more than the presumed intention of decedents who do not express their wish. It may therefore be urged that our inheritance statute does not generate a distinction between legitimate and illegitimate children but merely reflects the probable intent of individuals who are themselves constitutionally free to draw that line and who presumptively subscribe to the view of the statute by omitting to direct otherwise by will. Then, too, at least on the case of a male decedent, there is fear of spurious claimants, a problem more formidable in estate situations than in wrongful death actions in which the amount of the recovery will depend critically upon the amount of pecuniary injury shown."

With respect to point (2), it was stated in 54 N.J. at 201–202, 254 A.2d at 529:

> " * * * the underlying principle must be that when children suffer tortious injury by the wrongful death of a parent, their legitimacy is irrelevant to the tortfeasor's liability, and hence it is invidious to grant a remedy to the legitimate and withhold it from the illegitimate child. Under that thesis, it can be of no logical moment whether that parent was the mother or the father.

> "Hence the principle of *Levy* and *Glona* must equally apply when the vehicle of the injury to the illegitimate child is the death of his father. * * *"

A most interesting case comes out of *Weaks v. Mounter*, 1972, 88 Nev. 118, 493 P.2d 1307. A minor, age 19, was killed in a truck-motorcycle collision. A wrongful death suit followed, brought originally by the mother and father of the decedent, but upon motion to intervene, the illegitimate and posthumous daughter of the deceased was allowed as an additional plaintiff. While the wrongful death statute of Nevada is slightly different with respect to who may maintain the action, the law of Nevada, with respect to the proceeds of any judgment obtained, is practically to the same effect as our current § 1–1066:

§ 41.090, NRS

> "1. The proceeds of any judgment obtained in any action brought under the provisions of NRS 41.080 and this section shall not be liable for any debt of the deceased, provided he or she shall have left a husband, wife, child, father, mother, brother, sister, or child or children of a deceased child.

> "2. The court or jury, as the case may be, in every such action may give such damages, pecuniary and exemplary, as shall be deemed fair and just. Every person entitled to maintain such action, and every person for whose benefit such action is brought, may prove his respective damages, and the court or jury may award such person that amount of damages to which it considers such person entitled, including damages for loss of probable future companionship, society and comfort."

In the Nevada case the jury returned a verdict in favor of the natural parents for $10,000.00, plus $4,000.00 attorney's fees, and in favor of the minor daughter for $20,000.00.

The question was presented to the Nevada supreme court as to whether the right of a child includes an illegitimate child. The court stated in 88 Nev. at 121, 493 P. 2d at 1309:

"In this regard there has been a remarkable departure in the law. Indeed, fortune appears to smile upon the lot of the illegitimate who in times past was saddled with life's infirmities but could not always reap its benefits."

In 88 Nev. at 122–123, 493 P.2d at 1310, it was noted:

"Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted. Illegitimate children are humans and have their being. When the child's claim of damage for loss of his mother or father is in issue there is no sound reason why the tort feasor should go free merely because the child is illegitimate. * * *"

In *Armijo v. Wesselius*, 1968, 73 Wash. 2d 716, 440 P.2d 471, a baby girl was born illegitimate, her father had acknowledged his parentage of the impending child before his accidental death but he had not complied with written acknowledgment of paternity requirements of Washington statutes. Common-sense humanity, that court concluded, requires that the child of a decedent have a remedy under the wrongful death statute for loss of support and, further, that the "child or children" of a decedent with a remedy for lost support includes all natural or adopted children of the decedent who were dependent upon him in spite of a lack of legitimacy.

The cases we have discussed are included for the most part in a collection appearing in an annotation entitled "Discrimination on Basis of Illegitimacy as Denial of Constitutional Rights," 38 A.L.R.3d 613, 625, pertaining to state wrongful death statutes. There are a number of intermediate appellate court cases holding that wrongful death statutes do not preclude action by or on behalf of an illegitimate child, some of which are: *Evans v. Atlantic Cement Co.,* Fla.App.1973, 272 So.2d 538. (The rationale of this case has been referred to with approval by the supreme court of Florida in *Brown v. Bray,* Fla. 1974, 300 So.2d 668, 669, which declared that an illegitimate child may recover for the death of a parent.) *Cannon v. Transamerican Freight Lines,* 1971, 37 Mich. App. 313, 194 N.W.2d 736, and *In re Estate of Ross,* Sur.Ct., N.Y.1971, 67 Misc. 2d 320, 323 N.Y.S.2d 770. We studied, with interest, *La Blue v. Specker*, 1960, 358 Mich. 558, 100 N.W.2d 445, where the illegitimate child, through her mother as guardian, sued the defendant because of his negligence in killing the father in an automobile collision. This action was laid under a Michigan dramshop statute providing as follows:

C.L.S.1956, § 436.22 (Stat.Ann.1957 Rev. § 18.993).

"Every wife, husband, child, parent, guardian or other persons who shall be injured in person or property, means of support or otherwise, by an intoxicated person by reason of the unlawful selling, giving or furnishing to any such persons any intoxicating liquor, shall have a right of action in his or her name against the person who shall by such selling or giving of any such liquor have caused or contributed to the intoxication of such person or persons or who shall have caused or contributed to any such injury."

La Blue was a minor who became drunk as the result of the defendant selling him intoxicants and he drove in such a manner as to become a dead casualty. The plaintiff alleged that decedent's illegitimate daughter suffered extensive damages of loss of support which she would have enjoyed if La Blue had not been killed. Various objections were made that the youngster was not a child nor an "other person"

under the provisions of the section, was not yet born at the time of the accident, La Blue had no obligation to support the child after its conception and before his death and there had been no liability legally established to charge La Blue with the support of the child. There are comparable objectives to be sought by wrongful death and dramshop statutes. The court held that an illegitimate child is a "child" or "other person" under the statute.

Defendants contend that Heather's father, Bryan, never contributed to her support and there must have been such actual dependency before she can qualify as a beneficiary in a wrongful death action. In *Heather v. Delta Drilling, supra,* we discussed the theme that there is an obligation of support imposed by law upon the father of an illegitimate child and it was really of no significance that no actual support had been furnished by the father, killed only a few months after the child's birth. It is the child with whom we are concerned and a helpless baby should not have imposed upon her the obligation of assuring by a court proceeding that her father furnished actual support to make her a dependent in order to create an essential factor to assure recovery if he should be killed. It is not like nor fitting for a court to place such an impossible burden upon a babe-in-arms because her mother, guardian or public agency has not proceeded to protect her rights. The dependency exists whether or not some record has been made or kept.[11] The same can be said in regard to requiring such an infant to protect her right to support out of her father's estate by a proceeding under the Wyoming Uniform Illegitimacy Act,[12] § 14–64, set out in footnote 8, in particular, to establish paternity and adjudicate support. We mention this only in the light of this wrongful death action. We want it kept clear that we make no ruling with respect to a claim by an illegitimate child against her father's estate in the regular course of administration of a decedent's estate under the probate code.

Once the child has established the deceased as her father, and that has been admitted here, she still must prove her damages. The mechanics and technique of doing that constitute no questions to be resolved in this case. The court or jury may award the amount it considers fair and just. Section 1–1066, W.S.1957, 1975 Cum.Supp. In the state of Virginia, at the time the case was decided, there was no duty of a father to support an illegitimate child unless he admitted paternity under oath but in *Carroll v. Sneed,* 1971, 211 Va. 640, 179 S.E.2d 620, some of the problems of proving damages within restrictions not in effect in Wyoming are set out. The court there held that an illegitimate child was a child under the wrongful death statutes of Virginia and entitled to those damages that could be properly established. The court recognized that no right of inheritance was involved and one of the purposes of the wrongful death act was to provide support after death of the parent and observed in 179 S.E.2d at 622, in quoting from another of its cases, that, " 'The benefit conferred beyond being for such beneficiaries is for society's welfare in making provision for the support of those who might otherwise become dependent.' "

The parents of Bryan are also persons for whose benefit the action may be brought under the wrongful death act and through the administratrix may make their claims in their own right and not as alternative to Heather, as the parties viewed the matter in the district court. The amendment of § 1–1066 removed one of the inequities of the old version. The court or jury under the former practice returned a lump sum award. It was arbitrarily divided according to laws of intestacy without regard to the fact that one heir may have been entitled to more or less than the statutory share. The amendment permits each person claiming a loss to demand and prove his or her individual damage and recover, if shown to the court or jury to be fair and just.

---

11. 533 P.2d at 1215–1217.

12. Sections 14–59 et seq., W.S.1957, C.1965.

■ We hold that Wyoming's wrongful death statute cannot constitutionally deny an illegitimate infant the right to claim and recover damages for the wrongful death of his or her parent—mother or father. An illegitimate child is a "person" within the scope of § 1–1066, W.S.1957, 1975 Cum.Supp.[13]

The next question for consideration is whether the defendant, Delta Drilling Company, can be sued for wrongful death when it is claimed that it was guilty of willful negligence, causing the death of decedent, which allegedly is equivalent to intentional killing and therefore excepted from Wyoming Workmen's Compensation Act. There were two pertinent sections in effect at the time of the injury resulting in death:

Section 27–50, W.S.1957:

" * * * The right of each employee to compensation from such funds shall be in lieu of and shall take the place of any and all rights of action against any employer contributing, as required by law to such fund in favor of any such person or persons by reason of any such injury or death. * * *"

Section 27–51, W.S.1957:

"The rights and remedies provided in this act for an employee on account of any injury shall be exclusive of all other rights and remedies, at common law or otherwise, of such employee, his personal or legal representatives or dependent family on account of such injury; and the terms, conditions and provisions of this act for the payment of compensation and the amount thereof for injuries sustained or death resulting from such injuries shall be exclusive, compulsory and obligatory upon both employers and employees coming within the provisions hereof." [14]

It is clear that the language "take the place of any and all rights of action" [15] and "shall be exclusive of all other rights and remedies", means just what is said and needs no judicial construction. While not strongly in point, it was held in *Hart v. Blair*, Wyo.1963, 378 P.2d 677, that, as a general proposition, the exclusive remedy of the Wyoming workmen's compensation laws is the only remedy available unless the employment was unlawful or illegal.

■ A rule is referred to us by plaintiff as stated by 2 Larson, The Law of Workmen's Compensation, § 68.13, page 13–5:

"Since the legal justification for the common-law action is the nonaccidental character of the injury from the defendant employer's standpoint, the common-law liability of the employer cannot be stretched to include accidental injuries

13. We conclude also that Heather is a member of the human race entitled to protection under § 2, Art. I, Wyoming Constitution: "In their inherent right to life, liberty and the pursuit of happiness, all members of the human race are equal."

14. These sections were repealed by § 4, Chap. 149, Session Laws of Wyoming, 1975, but reappear in concept in § 27–312(a), W.S.1957, 1975 Cum.Supp., in considerably shortened form.

15. The full text of § 4, Article X, Wyoming Constitution, from which this phrase comes, is as follows:
"No law shall be enacted limiting the amount of damages to be recovered for causing the injury or death of any person. Any contract or agreement with any employee waiving any right to recover damages for causing the death or injury of any employee shall be void. As to all extra hazardous employments the legislature shall provide by law for the accumulation and maintenance of a fund or funds out of which shall be paid compensation as may be fixed by law according to proper classifications to each person injured in such employment or to the dependent families of such as die as the result of such injuries, except in case of injuries due solely to the culpable negligence of the injured employee. Such fund or funds shall be accumulated, paid into the state treasury and maintained in such manner as may be provided by law. The right of each employee to compensation from such fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to such fund in favor of any person or persons by reason of any such injuries or death."

caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury. * * * "

For a development of the reasons for the doctrine, see the many cases cited by Larson. We do not consider in this case whether even a genuine intentional injury is outside the cloak of the Workmen's Compensation Act. The above rule is useful only for the purpose of approaching the question of intentional injury and not to embrace it. Under the facts of this case, since there was no genuine intentional injury, we need not consider whether an intentional injury does in law take away the Act as the exclusive remedy. Heather's remedy as to Delta is exclusively within the provisions of the Workmen's Compensation Act and we have already held she is entitled to that. *Heather v. Delta Drilling Company, supra.*

■ The defendants, Cadwallader and Womack, are incorrect in their assertion that they are likewise protected by the exclusive remedy afforded by the workmen's compensation laws of Wyoming and fall under the mantle of their employer, Delta Drilling Company. It was held and settled in *Markle v. Williamson*, Wyo.1974, 518 P.2d 621, that under the workmen's compensation statutes, the co-employee of a deceased employee was a person other than the employer and enjoyed no immunity from suit for wrongful death based on alleged negligence, though both he and the deceased were active within the scope of their employment at the time of the accident in question.

Reversed as to all defendants-appellees except Delta Drilling Company; we affirm the trial court in its granting of summary judgment to Delta Drilling Company on the sole basis that it is covered by the Workmen's Compensation Act which is exclusive of all other remedies within the circumstances of this case.