795 P.2d 760 (1990)
STATE of Wyoming, ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Petitioner (Objector-Defendant),
v.
Jordan Jody HALSTEAD, a minor dependent child of Jody Glenn Dodgion, employee, Respondent (Claimant).
No. 89-130.
Supreme Court of Wyoming.
July 17, 1990.
*761 Joseph B. Meyer, Atty. Gen., Ron Arnold, Sr. Asst. Atty. Gen., and Larry M. Donovan, Asst. Atty. Gen., for petitioner.
Michael J. Finn of Kaumo, Piaia and Tyler, Rock Springs, for respondent.
Before CARDINE, C.J.,[*] THOMAS, URBIGKIT and GOLDEN, JJ., and ROONEY, Retired J.
URBIGKIT, Justice.
The Wyoming Workers' Compensation Division (State Fund) appeals from a summary judgment[1] in favor of Jordon Jody Halstead by an administrative hearing examiner who granted benefits to the child who had been born out of wedlock after his young father was killed in a work related accident. The State Fund contested the benefits granted to Jordon Jody Halstead on grounds that paternity had not been established and the statute of limitations for filing a claim had expired by the time paternity was established.
Because summary judgment was not available in this case, we reverse and remand.

FACTS
In 1985, sixteen year old Jody Glenn Dodgion became intimately associated with Alice Ione Colley, who became pregnant from the relationship.[2] Jody suffered a critical head wound at his first day of work on September 24, 1985, was declared disabled in early November and died December 4, 1985. On May 1, 1986, Jody's son, Jordan Jody Halstead, was born and his young mother, Alice Ione Colley, was appointed guardian on December 11, 1986. Chronologically thereafter, as a proceeding relating to the small child, a petition was filed on February 5, 1987 to establish paternity and, on May 9, 1988, a claim for death benefits for the dependent child under worker's compensation was filed[3] to which the State Fund objected. On June 2, 1988, the district court entered an order establishing Jody Glenn Dodgion as the father of Jordan Jody Halstead.[4]

ISSUES
The State Fund questions whether:
I. * * * [t]he administrative hearing officer err[ed] when she granted summary judgment to the appellee.
II. * * * [t]he order issued by the administrative hearing officer [was] arbitrary, capricious and an abuse of discretion or unsupported by substantial evidence in her findings that:
A. The Clerk of District Court is a party to a Workers' Compensation case, is an agent of the State, and the State is therefore bound by representations made by the Clerk's Office in reference to Workers' Compensation claims.

*762 B. The statute of limitations found at § 27-14-503, W.S. 1977, is tolled pending the establishment of paternity.
C. Appellee did not have standing to claim dependent child benefits until paternity in the deceased worker was established.
III. * * * [t]he administrative hearing officer err[ed] in ruling that the claim for benefits was not barred by § 27-14-503, W.S. 1977, and in not granting summary judgment for appellant.

SUMMARY JUDGMENT IS NOT GENERALLY AVAILABLE TO HEARING EXAMINERS
In the first issue, the State Fund argued there was a genuine issue of material fact rendering summary judgment inappropriate. Then it its third issue, the State Fund argued summary judgment was appropriate for it because there was no genuine issue of material fact presented. Both issues are resolved by reference to Jackson v. State ex rel. Wyoming Worker's Comp. Div., 786 P.2d 874 (Wyo. 1990).[5]
Summary judgment is not available in contested worker's compensation cases under Jackson unless it falls within the one exception in which the "agency's sole task is to determine questions of law or public policy." Jackson, 786 P.2d at 879. See Walker v. Karpan, 726 P.2d 82 (Wyo. 1986). That exception, in what is essentially a dismissal on the pleading similar to W.R.C.P. 12(b)(6), is not available to either party here because the pleadings do not establish either litigant to be entitled to relief as a matter of law. Jackson, 786 P.2d 874; Herring v. Welltech, Inc., 715 P.2d 553 (Wyo. 1986); Federal Power Commission v. Texaco, Inc., 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112, reh'g denied 377 U.S. 974, 377 U.S. 984, 84 S.Ct. 1881, 12 L.Ed.2d 745, 12 L.Ed.2d 753 (1964); Massachusetts Outdoor Advertising Council v. Outdoor Advertising Bd., 9 Mass. App. 775, 405 N.E.2d 151 (1980).

RESOLUTION OF THE CASE ON REMAND
With remand required, this court is still faced with three issues: (1) whether the State is bound under the doctrine of estoppel by representations allegedly made by the clerk of the district court; (2) whether the statute of limitations under W.S. XX-XX-XXX bars this claim; and (3) whether respondent was required to file a claim for benefits before paternity could be established.
For the reasons which follow, we hold the statute of limitations did not bar this claim because the statute was tolled until parentage was determined  an indispensable requirement for eligibility in this case. This holding negates the need to discuss the issue of estoppel.[6]
*763 The State Fund's issues essentially question the effect of W.S. XX-XX-XXX and XX-XX-XXX in this case.
Those statutes provide in relevant part:[7]
(a) An award for compensation involving an injury which is the result of a single brief occurrence rather than occurring over a substantial period of time shall not be made unless in addition to the proper and timely filing of the reports of the accident, an application or claim for award is filed within one (1) year after the date the accident occurred or for injuries not readily apparent, within one (1) year after discovery of the injury by the employee. The report of accident is not a claim for compensation.
W.S. XX-XX-XXX.
If an injured employee is mentally incompetent or a minor, or where death results from the injury and any of his dependents are mentally incompetent or minors, at the time when any right or privilege accrues under this act, no limitation of time provided for in this act shall run so long as the mentally incompetent or minor has no guardian.
W.S. XX-XX-XXX (emphasis added).
We interpret the clause "at the time when any right or privilege accrues under this act" in W.S. XX-XX-XXX to mean Jordan Jody Halstead's right accrued on June 2, 1988 when the order of the district court determined Jordon Jody Halstead, within his status of illegitimacy, was the child of the deceased worker. The district court determination then made the child a valid claimant. Consequently, we find that the date of determination of parentage was the date the right to claim benefits accrued. Under the statute, the right to claim benefits would not have expired at the one year period after the guardian had been appointed because the child's familial rights to be a claimant came to exist with his determination by a decree of parentage that the decedent worker was his father. The good cause case, Hawkins v. Safety Casualty Co., 146 Tex. 381, 207 S.W.2d 370 (1948) is compatible in result. We consequently hold that the statute of limitation began to run on June 2, 1988 with the entry of the parentage decree.
*764 In the similar context of Bauer v. State ex rel. Wyoming Worker's Compensation Div., 695 P.2d 1048 (Wyo. 1985), this court determined the limitation period was no bar under estoppel. The same reasoning can be applied to an expiration of a right to claim before that right to claim comes to exist under the statute. Mominee v. Scherbarth, 28 Ohio St.3d 270, 503 N.E.2d 717 (1986). A principal responsibility in statutory interpretation is to apply the legislative intent demonstrable from the language utilized in order to sustain its constitutionality. Our decision that here the limitation period for Jordan Jody Halstead started when his paternity had been established, finds support from criteria in two different areas of constitutional law development.
In first concept, as a principle logically rejective of petitioner's argument, are the cases which address statutes of limitation limiting the time available for the parentage of the minor child to be determined, which issue evokes consideration of discrimination between legitimate and illegitimate children violative of equal protection and due process rights under the Fourteenth Amendment of the United States Constitution. Criteria addressing unjustified burdens upon the illegitimate child as a constitutional deprivation are addressed in three decisions of the United States Supreme Court. Pickett v. Brown, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); Mills v. Habluetzel, 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982); Gomez v. Perez, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973). Any unduly restrictive time limitations for proof of parentage is unconstitutional. Enforcement of a parental support obligation within the illegitimacy status is, dependent upon determination of the parentage of the father and a time limitation that imposes a burden on the illegitimate child, significantly different from the status of the legitimate child which was determined to be unconstitutional under the equal protection clause of the Fourteenth Amendment. Pickett, 462 U.S. at 18, 103 S.Ct. at 2209. The Pickett-Mills cases resulted in substantial state court decisions also voiding unduly restrictive statutory limitations for illegitimate children to prove a parentage relationship with the father based normally on a Fourteenth Amendment concept of due process and equal protection. State, Dept. of Health and Rehabilitative Services, on Behalf of Gillespie v. West, 378 So.2d 1220 (Fla. 1979), four year statute of limitation unconstitutional; Dornfeld v. Julian, 104 Ill.2d 261, 84 Ill.Dec. 471, 472 N.E.2d 431 (1984), two year statute of limitation unconstitutional; State ex rel. Rake v. Ohden, 346 N.W.2d 826 (Iowa 1984), two year statute of limitation unconstitutional; Alexander v. Com. ex rel. Mills, 708 S.W.2d 102 (Ky.App. 1986), four year statute of limitation unconstitutional; Com. ex rel. Lepard v. Young, 666 S.W.2d 735 (Ky. 1983), three year statute of limitation unconstitutional; Frick v. Maldonado, 296 Md. 304, 462 A.2d 1206 (1983), two year statute of limitation unconstitutional; State Dept. of Revenue v. Wilson, 634 P.2d 172 (Mont. 1981); three year statute of limitation unconstitutional; State ex rel. Adult and Family Services Div. v. Bradley, 295 Or. 216, 666 P.2d 249 (1983), six year statute of limitation unconstitutional; Tennessee Dept. of Human Services v. Hinton, 660 S.W.2d 506 (Tenn. App. 1983), two year statute of limitation unconstitutional. Cf. Astemborski v. Susmarski, 499 Pa. 99, 451 A.2d 1012 (1982), cert. granted and judgment vacated 462 U.S. 1127, 103 S.Ct. 3105, 77 L.Ed.2d 1360, remanded 502 Pa. 409, 466 A.2d 1018 (1983), a six year statute of limitation to bring paternity action was determined to be constitutional.
The constitutional principles of Pickett and Mills assuring an adequate opportunity for a child to prove parentage to secure support cannot be distinguished from the child's right to also prove parentage to acquire decedent benefits under worker's compensation. We construe the limitation period to be constitutional under due process and equal protection by rejecting a discriminatory result against an illegitimate child. Heather v. Delta Drilling Co., 533 P.2d 1211 (Wyo. 1975). With proof of parentage, the limitation period commences, provided the guardianship requirement *765 of the compensation statute is met. W.S. XX-XX-XXX. See likewise regarding the rights of the father for due process in any parentage denial, Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and In re Adoption of B.G.S., 556 So.2d 545 (La. 1990).
There is a second cluster of constitutionally disposed cases addressing statute of repose where there is the potential for the period for filing a claim to terminate before the incident of damage or loss has actually occurred. See, for example, Phillips v. ABC Builders, Inc., 611 P.2d 821 (Wyo. 1980); Carr v. Broward County, 541 So.2d 92 (Fla. 1989); Shessel v. Stroup, 253 Ga. 56, 316 S.E.2d 155 (1984); Klein v. Catalano, 386 Mass. 701, 437 N.E.2d 514 (1982); Daugaard v. Baltic Co-op. Bldg. Supply Ass'n, 349 N.W.2d 419 (S.D. 1984); Neagle v. Nelson, 685 S.W.2d 11 (Tex. 1985); Nelson v. Krusen, 678 S.W.2d 918 (Tex. 1984); and Funk v. Wollin Silo & Equipment, Inc., 148 Wis.2d 59, 435 N.W.2d 244 (1989). Those cases have a logical relevance to this case, where premised on a constitutional right, to be able to assert a remedy before a statutory abnegation of the right occurs. Shessel, 316 S.E.2d 155; Neagle, 685 S.W.2d 11. Although we have no equivalent worker's compensation precedent which has been presented or found in our research, these cases appropriately direct attention to the same problem of exhaustion of the right to a remedy before the opportunity for its utilization may have occurred, Hardy v. VerMeulen, 32 Ohio St.3d 45, 512 N.E.2d 626 (1987), cert. denied 484 U.S. 1066, 108 S.Ct. 1029, 98 L.Ed.2d 993 (1988), and sometimes before the incident of damage or loss has occurred, Kenyon v. Hammer, 142 Ariz. 69, 688 P.2d 961 (1984). Although currently centered in the field of medical malpractice,[8]Gaines v. Preterm-Cleveland, Inc., 33 Ohio St.3d 54, 514 N.E.2d 709 (1987), the cases involve a broad array of statutes where a repose and not a limitation function is introduced as the boundary of time for action by the injured party.[9]Jackson v. Mannesmann Demag Corp., 435 So.2d 725 (Ala. 1983); Heath v. Sears, Roebuck & Co., 123 N.H. 512, 464 A.2d 288 (1983); Hanson v. *766 Williams County, 389 N.W.2d 319 (N.D. 1986); Kennedy v. Cumberland Engineering Co., Inc., 471 A.2d 195 (R.I. 1984); Daugaard, 349 N.W.2d 419. Within this class of cases, there is the injured child segment. Strahler v. St. Luke's Hosp., 706 S.W.2d 7 (Mo. 1986); Coffey v. Bresnahan, 127 N.H. 687, 506 A.2d 310 (1986); Mominee, 503 N.E.2d 717; Sax v. Votteler, 648 S.W.2d 661 (Tex. 1983). There is also within some of the cases an analytical trend that has developed which avoids the determination of textural unconstitutionality in the statute of repose situation by denying application of the limitation until a reasonable time after the right might have been pursued following damage and known knowledge of injury. Kohnke v. St. Paul Fire and Marine Ins. Co., 144 Wis.2d 352, 424 N.W.2d 191 (1988). This adaptation applies a condition to the statutory language that, despite its terms, if the incident of damage or discovery occurs after the expiration of the period provided, a reasonable time continues to exist for the claim to be made. Tucker v. Nichols, 431 So.2d 1263 (Ala. 1983); Kenyon, 688 P.2d at 979, Cameron, J., concurring; Austin v. Litvak, 682 P.2d 41 (Colo. 1984). See also Coffey, 506 A.2d 310.
The obvious philosophical and sociological concern that a right which actually exists as the result of the misconduct of a person may be lost before anything can be done to pursue attainment of a remedy has authored an obvious trend either in construction to achieve constitutionality or a determination of unconstitutionality in these statute of repose cases. Phillips, 611 P.2d 821; Carson v. Maurer, 120 N.H. 925, 424 A.2d 825 (1980); Note, The Constitutionality of Statutes of Repose: Federalism Reigns, 38 Vand.L.Rev. 627, 644 (1985). A perspective of constitutionality which initially developed a number of years ago when statutes of repose first appeared in the construction and later products liability segments of the law has now developed a clear converse trend in recent result. See Note, The Unconstitutionality of Medical Malpractice Statutes of Repose. Judicial Conscience Versus Legislative Will, 34 Vill.L.Rev. 397 (1989) and most recent examples found in the Utah cases, Horton v. Goldminer's Daughter, 785 P.2d 1087 (Utah 1989); Stilling v. Skankey, 784 P.2d 144 (Utah 1989); and Sun Valley Water Beds of Utah, Inc. v. Herm Hughes & Son, Inc., 782 P.2d 188 (Utah 1989). In the Utah cases, the court held that the Utah architect's and builder's statute of repose establishing a seven year limitation was unconstitutional under the open court provision of the Utah Constitution. In analysis of the difference between a statute of limitation which provides a period of time after a right accrues to pursue action and a statute of repose which limits the time for a right of action even though the event may not have yet occurred from which the damage accrues, the Utah court in Horton and Sun Valley Water Beds of Utah, Inc. pursues the national precedent. The critical concern manifested in the whole periphery of statute of repose cases are those circumstances where the time runs out before the opportunity to pursue relief occurs, Funk, 435 N.W.2d 244, either because the event of damage has not yet developed, Note, Oklahoma's Statute of Repose Limiting the Liability of Architects and Engineers for Negligence: A Potential Nightmare, 22 Tulsa L.J. 85, 105 (1986), or discovery of the injury may not have occurred, Clark v. Singer, 250 Ga. 470, 298 S.E.2d 484 (1983); Carson, 424 A.2d 825; Berry By and Through Berry v. Beech Aircraft, Corp., 717 P.2d 670 (Utah 1985). This problem is magnified in those cases where medical malpractice injuries to minor children are the subject matter of the litigation. Schwan v. Riverside Methodist Hosp., 6 Ohio St.3d 300, 452 N.E.2d 1337 (1983). See also Young v. Haines, 41 Cal.3d 883, 226 Cal. Rptr. 547, 718 P.2d 909 (1986). The same thesis is applied here to permit filing the claim after parentage has been established.
Another argument advanced by the State Fund requires attention. It is argued that parentage was not material and the date of its determination lacks adjudicatory significance for the proceeding. The concept of that argument is that the fetus was not dependent on the father at *767 the date of his injury or death. This position argues that dependency alone and not parentage is the criterion. This argument has sustainable validity only if we say that a post-humous legitimate child is also not necessarily the dependent of the father. Discrimination based on the status of the child is constitutionally impermissible. Jordan v. Delta Drilling Co., 541 P.2d 39 (Wyo. 1975); Gomez, 409 U.S. 535, 93 S.Ct. 872. Since we are obviously not willing to hold that a legitimate child may have rights as a child only if the mother is living with the father just prior to death, we will also hold for the purpose of this case that Jordan Jody Halstead was dependent on Jody Glenn Dodgion since the law specifically provides parental obligations which have effectuation upon birth. Heather, 533 P.2d 1211.[10] Without parental determination, the enforceable dependency responsibility does not accrue since the functional factor in enforceability is the determination of that parental relationship. In this regard, we adopt the analysis on the subject utilized by the hearing examiner. As a matter of law, the prospective child is a dependent of the putative father if in fact the child, when born, is actually his child. Bowers v. Wyoming State Treasurer ex rel. Workmen's Compensation Division, 593 P.2d 182 (Wyo. 1979); Jordan, 541 P.2d 39; Gomez, 409 U.S. 535, 93 S.Ct. 872.
We are further sustained in this decision by the absence of countervailing authority. The State Fund provided none and our research has not developed precedent to the contrary. The constitutional perspective of the rights of the child, whether illegitimate or legitimate, was determined by the United States Supreme Court in its Fourteenth Amendment, due process and equal protection cases of Pickett, Mills, and Gomez. The foundational case for Wyoming is Heather, cited by the State Fund, where the court reversed a death benefit denial rendered on the basis that illegitimacy deprived the child of entitlement to benefit under the statute. In Heather, the baby was only a few months old when the admitted father was killed. By that time, no proceedings to determine parentage or assess support responsibility had been initiated and no actual support had been received. The court found a presumption of dependency from the fact of parentage. Here, the hearing examiner found a status of dependency by the status and relationship between the mother and father and the obligation that the father had for the child yet then unborn.
We recognize that the State Fund takes comfort in Jim's Water Service v. Eayrs, 590 P.2d 1346 (Wyo. 1979) to provide support for a rule that actual economic dependency is the test rather than parental responsibility. We will confine Jim's Water Service to its facts of step-children which present a far different arena of responsibility than those for which the parent is impressed by law with support obligations for his or her children. We will not apply Jim's Water Service to control the legal status of statutory dependency when a child is born after the death of its father who had no opportunity to acknowledge or deny that fatherhood. Heather, 533 P.2d 1211, which was followed by Jim's Water Service, 590 P.2d 1346 and then followed by Bowers, 593 P.2d 182, clearly prohibited any discrimination between children, dependent on inter-marriage of their parents. The strong support stated in Bowers for Heather convinces us that it reflects the current law of required equality in availability for support between the natural child and the child born out of wedlock.

Heather carefully considers the federal decisions, the philosophy for change and concludes that such a distinction between children
"* * * establishes a discriminatory classification which is justified by no *768 legitimate state interest and violates the equal protection clause of the Fourteenth Amendment to the [C]onstitution of the United States." 533 P.2d at 1212.[[11]]
Bowers, 593 P.2d at 183-84.
Reversed and remanded.
GOLDEN, J., concurs in the result only.
ROONEY, Retired J., filed an opinion specially concurring in part and dissenting in part.
ROONEY, Justice, Retired, specially concurring in part and dissenting in part.
I concur with the procedural holding of the majority opinion, i.e., that which holds that the hearing examiner lacked the power to give a summary judgment. See Jackson v. State ex rel. Wyoming Workers' Compensation Division, 786 P.2d 874 (Wyo. 1990). I find additional procedural error. I dissent from that held in the rest of the majority opinion  the substantive holding.

PROCEDURE
The improper entry of a summary judgment by the hearing examiner is an indication of her misunderstanding of her role in this proceeding. She does not act in this matter as a judge  although she signs her letter opinion and the "judgment" with the designation of "Administrative Law Judge," and her letterhead reflects Gerald F. Murray to be "Chief Administrative Law Judge." The rules of practice and procedure adopted by the hearing examiner defines the office of hearing examiner as "court" and the hearing examiners as "judges." The hearing is defined as "trial." They provide for appointment of attorneys and for fixing of the attorney fees by the hearing examiners. The misunderstanding by the hearing examiner is a result of a potential ambiguity in W.S. XX-XX-XXX. It provides in part[1] that "[t]he case *769 shall be determined by a hearing examiner following the contested case procedures of the Wyoming Administrative Procedure Act." Seemingly, the hearing examiners interpret this section to give them authority to resolve matters subject only to an appeal to the district court, whereas the contested case procedures of the Wyoming Administrative Procedure Act (referred to in such section) makes provision for a hearing before the agency, i.e., the Workers' Compensation Division, and for an officer to preside at the hearing with authority and power to "[m]ake recommended decisions when directed to do so by the agency." (Emphasis added.) See W.S. 16-3-112.[2]
If the interpretation given by the hearing examiner to such provision in W.S. XX-XX-XXX is correct, then the provision would be unconstitutional in violation of Article 2, Section 1 of the Wyoming Constitution. It provides:
"The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."
*770 Although the prohibition in Article 2, Section 1 of our constitution is very exact,[3] practical application of it, together with the check and balance scheme of the Constitution, results in some overlapping of the powers of the three branches. But the overlap should be confined to that which is implicit in the check and balance scheme or which is an obvious practical adjunct to the principal power and authority of the respective branch or agency.
"The courts have perceived the necessity of avoiding a narrow construction of a state constitutional provision for the division of the powers of the government into three distinct departments, for it is impractical to view the provision from the standpoint of a doctrinaire. Thus, the modern view of separation of powers rejects the metaphysical abstractions and reverts instead to a more pragmatic, flexible, functional approach, giving recognition to the fact that there may be a certain degree of blending or admixture of the three powers of government. Moreover, the doctrine of separation of powers has never been strictly or rigidly applied, and indeed could not be, to all the ramifications of state or national governments; government would prove abortive if it were attempted to follow the policy of separation to the letter.
"The doctrine does not require such a rigid classification of all the incidental activities of government as to make it improper for one branch of the government to use any technique or method of procedure already adopted by another branch of the government. At the same time, it is the duty of the courts to attempt to enforce the true meaning, intent, and purpose of the constitutional provision declaring the distribution of governmental powers, notwithstanding there is necessarily some mingling and overlapping of powers between the three departments of government which cannot be avoided rather than to encourage departure therefrom.
* * * * * *
"The correct principle deductible from the better-reasoned cases dealing with the separation of powers seems to be that even the primary function of any of the three departments may be exercised by any other governmental department or agency so long as (1) the exercise thereof is incidental or subsidiary to a function or power otherwise properly exercised by such department or agency, and (2) the department to which the function so exercised is primary retains some sort of ultimate control over its exercise, as by court review in the case of the exercise of a power judicial in nature." (Emphasis added and footnotes omitted.)
16 Am.Jur.2d, Constitutional Law, § 299 (1979), and see the cases cited therein.
As an example of the overlap, the ability of an executive agency to make rules and regulations (primarily a legislative function) is confined to making rules and regulations pertaining to the business or function of such agency. Again, the ability of an executive agency to determine legal rights, duties or privileges after a hearing (primarily a judicial function) is confined to instances pertaining to the business or function of such agency  and then subject to judicial review.
In this instance, if the hearing examiner is part of the Workers' Compensation Division, as the agency,[4] she is acting incidental as subsidiary to the function of that agency *771 (making her recommendations to the agency for agency action as required by W.S. 16-3-112), and the separation of powers provision of the constitution is not violated. However, if the office of hearing examiner is an "agency" within itself, then, since its only function is judicial, and with the hearing examiner's action not being incidental or subsidiary to any other function of the agency, i.e., the hearing examiner, a violation of the separation of powers provision of the constitution would result.
Of course, the legislature could establish separate subordinate courts with jurisdiction over contested workers' compensation cases. Article 5, Section 1 of the constitution provides:
"The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts, and such subordinate courts as the legislature may, by general law, establish and ordain from time to time." (Emphasis added.)
Such courts would be part of the judiciary, subordinate to the district courts and the Supreme Court, judges being selected and procedures being followed as required for the judiciary. They would not be a part of the executive branch as may be contemplated by W.S. XX-XX-XXX(b).[5] The interpretation placed on the statute by the hearing examiners is easily understandable. Such could have been the legislative intent in its enactment.
Legislative intent is the primary and foremost consideration in statutory construction. Such intent should be ascertained as nearly as possible from the language of the statute. State Board of Equalization v. Tenneco Oil Co., 694 P.2d 97 (Wyo. 1985); State ex rel. Motor Vehicle Division v. Holtz, 674 P.2d 732 (Wyo. 1983); In re Adoption of MM, 652 P.2d 974 (Wyo. 1982); Wyoming State Department of Education v. Barber, 649 P.2d 681 (Wyo. 1982). All portions of an act must be read in pari materia, and every word, clause and sentence of it must be given effect and considered so that no part will be inoperative or superfluous, all with the purpose of ascertaining and giving effect to the legislative intent. Story v. State, 755 P.2d 228 (Wyo. 1988); Hamlin v. Transcon Lines, 701 P.2d 1139 (Wyo. 1985); Haddenham v. City of Laramie, 648 P.2d 551 (Wyo. 1982).
The hearing examiner's interpretation is consistent with the language in the first sentence of the statute, i.e., "the office of independent hearing examiners is created as a separate and independent agency" (emphasis added), and it is consistent with the language in subsection (c), i.e., "[t]he hearing examiner has exclusive jurisdiction to make final administrative determination of the validity and amount of compensation payable under the act." Although not part of the act, the title to the 1989 amendment to it reflects in part the creation of the agency "separate from the division."[6]
However, as already noted, the foregoing is inconsistent with the direction in subsection (b) of the act for "following the contested case procedures of the Wyoming Administrative Procedure Act." The legislative intent in enacting the statute is to have it conform with the constitution. Any reasonable construction will be resorted to in order to sustain the constitutionality of an act of the legislature. Hopkinson v. State, 664 P.2d 43 (Wyo. 1983), cert. denied 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); Hanson v. Town of Greybull, 63 Wyo. 467, 183 P.2d 393 (1947); Stewart v. City of Cheyenne, 60 Wyo. 497, 154 P.2d 355 (1944); Board of Commissioners of Big Horn County v. Woods, 18 Wyo. 316, 107 P. 753 (1910); Barkwell v. Chatterban, 4 Wyo. 307, 33 P. 940 (1893).
*772 Accordingly, W.S. XX-XX-XXX[7] must be construed to establish the office of hearing examiners as part of the Wyoming Workers' Compensation Division, to which Division the hearing examiner recommends action in cases heard by him  all pursuant to the Wyoming Administrative Procedure Act. Since such was not done in this case, I would remand it to the agency for action by it on its recommendation of the hearing examiner.[8]

SUBSTANTIVE
Normally, a remand on the procedural error would make unnecessary consideration of the substantive issues. However, since the majority opinion considered the substantive issues  all in the interest of judicial economy and efficiency  and in recognition that this matter came to us on certification from the district court, I submit the following dissent to the substantive determination of the majority of the court.

1  STATUTE OF LIMITATIONS
The hearing examiner and the majority of the court, in a compassionate and laudable effort to afford relief to respondent, each apply different provisions of the Wyoming Worker's Compensation Act to avoid the operation of the statutory limitation for filing by respondent of a claim for benefits.[9] Neither application is directly pertinent to the time at which the one year limitation period began to run in this case  the beginning of such period being tolled because of respondent's minority.[10] *773 I find the time at which the period began to run to be clearly and simply set forth in the last clause of W.S. XX-XX-XXX, i.e., in "no limitation of time provided for in this act shall run so long as the mentally incompetent or minor has no guardian."
This clause must be given some meaning. See Story, Hamlin and Haddenham (supra) regarding all portions of an act must be read in pari materia, and every word, clause and sentence of it must be given effect and considered so that no part will be inoperative or superfluous, all with the purpose of ascertaining and giving effect to the legislative intent. This clause would be inoperative, superfluous and meaningless under the holding of the hearing examiner or under that of the majority of the court. Giving effect to the clause results in the one year limitation being tolled only until the minor or incompetent has a guardian.
In this case, the guardian was appointed for respondent on December 11, 1986. The claim was not filed until May 9, 1988. Accordingly, it was barred by the one year limitation for the filing of it.
The majority opinion holds that the language "at the time when any right or privilege accrues" in W.S. XX-XX-XXX[11] is controlling, and that such accrual occurred when "the order of the district court determined Jordan Jody Halstead, within his status of illegitimacy, was the child of the deceased worker." As already noted, such interpretation makes a nullity of later words in the act directly stating that the limitation of time ceases to run upon appointment of a guardian for the minor or the incompetent. Additionally, the language "at the time when any right or privilege accrues" refers to the existence of the status of incompetency or minority at such time. In this case, respondent met the minority requirement whether the right or privilege accrued at the time of his birth, when his guardian was appointed, when the claim was filed, or when paternity was declared by the court. Having met that requirement, inquiry next turns to the following language in the act which designates the time during which the limitation on time for filing of a claim is tolled, i.e., "so long as the mentally incompetent or minor has no guardian."
Compassion for respondent cannot change the law. Courts are bound to interpret and declare what is the law, they cannot usurp the power of the legislature by deciding that which should have been said in the law. Berber v. State Highway Commission, 80 Wyo. 340, 342 P.2d 723 (Wyo. 1959); Hamilton v. Territory of Wyoming, 1 Wyo. 131 (1893).
The hearing examiner held the language in W.S. XX-XX-XXX(a)(iii)[12] to be controlling. She held that respondent did "not fit into the definition of child and would not be entitled to Worker Compensation benefits" until "[a] formal action to establish paternity * * * [was had] before a claim could be made." The opposite conclusion with reference to respondent's fitting the definition of "child" was reached by this court in Heather v. Delta Drilling Company, 533 P.2d 1211 (Wyo. 1975). We held that the word "children" includes illegitimate children. The conclusion of the court in Heather is the proper one. (The issue as to the fact of paternity was not before the court in Heather since the father admitted paternity.)
The hearing examiner's holding does focus on the problem of paying benefits without assurance that the recipient is actually the son of the employee. The answer is in a recognition that the filing of a claim does not ipso facto result in payment of it. The law requires the filing of a claim within one year after the disability of minority is removed, i.e., upon appointment of a guardian. One of the elements to be established at the hearing with reference to payment *774 of the claim is the fact of paternity. Of interest in this case is the fact that the claim was actually dated May 4, 1988 and filed May 9, 1988, about a month before June 2, 1988 when the order establishing paternity was filed. If the guardian had acted properly, the claim could have been filed within a year after appointment even if the fact of paternity had not then been judicially declared[13]  just as it was filed about a month before such declaration.
When the question of paternity was presented at the hearing, the hearing examiner could have taken whatever action was necessary to be sure benefits were not paid until paternity was judicially declared, e.g., continued the hearing, make an award subject to the judicial declaration of paternity, etc. Such action is not precluded by the Wyoming Administrative Procedure Act.
W.S. 16-3-107 relative to general procedure in contested cases under the Wyoming Administrative Procedure Act provides in pertinent part:
"(j) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved. * * *
"(k) * * * Every agency shall proceed with reasonable dispatch to conclude any matter presented to it except that due regard shall be had for the convenience and necessity of the parties or their representatives. * * *
* * * * * *
"(n) Unless precluded by law, informal disposition may be made of any contested case by stipulation, agreed settlement, consent order or default."
In summary, respondent (by and through his guardian) failed to file his claim for benefits within the statutorily authorized time for doing so, i.e., one year after appointment of the guardian. If the claim had been timely filed, the decision on it could have been delayed for a reasonable time pending judicial declaration of paternity or nonpaternity.

2  ESTOPPEL
The hearing examiner ruled that the Workers' Compensation Division was estopped, in any event, from refusing to accept a claim for benefits after the statutory limitations period on the basis of information furnished to respondent's grandmother (mother of respondent's mother) by an employee of the Clerk of Court.
In an affidavit submitted to the hearing examiner, the grandmother, Carolyn Halstead, stated that she made two telephone calls to the office of the District Court, Sweetwater County, in which she talked to Mrs. Hoover, an employee of that office. She stated that during the first conversation in late September 1985, she was told by Mrs. Hoover "that since the paternity of Jody Glenn Dodgion as to the then unborn child of Alice Ione Colley was not established, a Worker's [sic] Compensation claim could not be filed." She stated that during the second conversation in early December 1985, she was "again" told by Mrs. Hoover "that a Worker's [sic] Compensation claim could not be filed on behalf of Alice Ione Colley's unborn child until Jody Glenn Dodgion's paternity of the unborn child was established."
In an affidavit submitted to the hearing examiner, Jennie L. Hoover stated that she was an employee of the office of the Clerk of District Court, Sweetwater County, and received the two telephone calls from Carolyn Halstead who inquired "as to the requirements necessary to receive death benefits for Jordan Jody Halstead." She stated that she "told Carolyn Halstead that it was the burden of the claimant to establish entitlement to death benefits. I told Carolyn Halstead that the claimant has to establish that he was the child. I did not tell Carolyn Halstead that a separate paternity action was required. I told Carolyn Halstead that a birth certificate is generally sufficient evidence." She further stated that "I did not refuse to accept application *775 for benefits," and that "[a]t no time did anyone on behalf of Jordan Jody Halstead attempt to file for death benefits."
Here, there is not only a direct conflict in testimony concerning the nature of the advice as to whether or not "a claim could be filed," but there is a lack of involvement by the parties to this matter in the communication concerning the advice. Carolyn Halstead is not a party to this matter. Alice Colley, the daughter of Carolyn Halstead, is the guardian of respondent and a party to this action. The Clerk of Court is not a party to this matter  the Workers' Compensation Division is.
"The elements of equitable estoppel are that the party asserting estoppel must show that he (1) lacks the knowledge of facts, (2) is without means of discovering them, (3) relies upon actions of the party sought to be charged, and (4) changed position accompanying such reliance." (Emphasis added and citation omitted.)
Cheyenne Dodge, Inc. v. Reynolds and Reynolds Company, 613 P.2d 1234, 1236 (Wyo. 1980).
Any assertion made by Mrs. Hoover concerning this matter was not made as a party to it. The action by Mrs. Hoover was not an action by the Workers' Compensation Division. She was acting in performance of the ministerial duties of the Clerk of Court. She could not give legal advice, and, if she did, respondent acting through his guardian could not rely thereon for the purpose of estoppel.
"The well-recognized rule is that a representation as to a matter of law will not ordinarily support an action for fraud or deceit, nor constitute an estoppel to rely upon the statute of limitations, the reason for the rule being that representations as to matters of law are ordinarily considered as expressions of opinion, and justifiable reliance cannot be had upon the mere opinion of another."
51 Am.Jur.2d, Limitation of Action, § 451 (1970) and cases there cited.
Additionally, Carolyn Halstead's relay of information to the guardian placed it in the category of hearsay. A party (the guardian) should not be able to rely on hearsay concerning the acts of another as a basis of estoppel.
Conclusive in this connection is the fact that the second element listed supra in Cheyenne Dodge, Inc. as necessary for estoppel is not here present, i.e., "the party asserting estoppel must show that he * * * (2) is without means of discovering [the facts]." Respondent, through his guardian, was represented by an attorney during much of the period in which the claim could be timely filed. And, as noted supra, the claim for benefits was actually filed before paternity was judicially declared.

3  DEPENDENCY
Nothing said in this dissent is intended to modify in any way the previous holdings of this court making substantial dependency of a minor child on the employee as a test of eligibility for benefits. The following language in W.S. XX-XX-XXX(a)(iii)[14] must be given some meaning:
"`Child' means any unmarried minor or physically or mentally incapacitated individual receiving court ordered support or substantially all of his financial support from the employee at the time of injury or death of the employee * * *."
We properly said in Jim's Water Service v. Eayrs, 590 P.2d 1346, 1351 (Wyo. 1979):
"[W]e conclude that the definition of a child was intended by the legislature to make substantial dependency the test of eligibility and to eliminate the confusion and dispute existing before regarding stepchildren, adoption, legitimacy, lineage, and alienage."
And in Heather, 533 P.2d at 1213, the acknowledged illegitimate child was "never actually furnished any specific financial or other support by her father." Nonetheless, we held that there was a conclusive presumption of her dependency. The court said:
"`Dependency in fact must be established in order to qualify for death benefits in all cases except those involving a *776 conclusive presumption of dependency. Proof of actual dependency does not require a showing that the claimant relied on the deceased for the bare necessities of life and without his contribution would have been reduced to destitution; it is sufficient to show that the deceased's contributions were looked to by claimant for the maintenance of claimant's accustomed standard of living. Hence a claimant may be dependent although receiving other income from claimant's own work, from property or from other persons on whom claimant is also dependent. Usually, actual contribution to claimant's support is enough to establish dependency without evidence of legal obligation to support. Proof of bare legal obligation to support, unaccompanied by either actual support or reasonable expectation of support, is ordinarily not enough to satisfy the requirement of actual dependency. Under the general principle that morality is not an inherent ingredient of dependency, a statuted based on dependency in fact is none the less satisfied when actual dependency accompanies unconventional domestic arrangements.'"
Id. at 1214, n. 7 (quoting 2 Larson, The Law of Workmen's Compensation, § 63.00, p. 11-58).
In this case, the employee was living with respondent's pregnant mother. The conclusive presumption of dependency existed even before birth. If the claim for relief had been timely filed, benefits could not have been denied on the basis of lack of dependency.
Of course, dependency alone is not sufficient for eligibility for benefits. The parent-child relationship (referred to in the last portion of W.S. XX-XX-XXX(a)[15] must also exist. Again, if the claim for relief had been timely filed, the dependency and the relationship could have been established in this instance.
I would remand this case to the Workers' Compensation Division for correction of the procedural defect, i.e., for receipt of the hearing examiner's recommendation, and for action thereon in accordance with this dissent.
NOTES
[*] Chief Justice at time of oral argument.
[1] When appellate briefs include page references to the record to support factual claims made in the briefs, those claims can be checked at a glance. When the briefs contain no page references, valuable legal research time is expended because the entire record must be searched for each claim. Petitioner's thirty-four page brief did not contain a single cite to the record. We advise in the strongest terms that all briefs comply with W.R.A.P. 5.01(3). See Condict v. Condict, No. 89-51 (Wyo. January 24, 1990) (reh'g denied February 7, 1990) (order dismissing appeal with prejudice).
[2] There was no evidence to indicate Jody Glenn Dodgion was aware by the time he died that Alice Ione Colley had become pregnant.
[3] The May 9, 1988 claim for death benefits for the dependent child, which initiated the hearing and presents this appeal, is not to be found in the record. The concurrence of the litigants and the assumptions of the briefing suffice to obviate remand on this basis alone, but clarification of the record is required that a claim was in fact made before further final action is taken.
[4] There was a third proceeding when, by declaratory judgment, the teenage mother contested whether members of the decedent's family could be claimants in a wrongful death proceeding. This issue was decided in Butler v. Halstead By and Through Colley, 770 P.2d 698 (Wyo. 1989).
[5] Jackson, 786 P.2d 874 had not been decided when this case was argued before this court. The effect of a more recent statutory change will not be presently considered. Wyo. Sess. Laws ch. 88 (1990) may or may not have effectively superceded Jackson.
[6] The estoppel argument grows from an allegation that personnel in the Sweetwater County District Court clerk's office furnished information to the mother of Alice Colley, who was later appointed guardian ad litem and who brings this suit for the benefit of the young child. The State Fund contests both what was said to this third party and authority of personnel in the clerk's office within the newly centralized state agency system. Surprisingly, no discussion has surfaced about the direction given by the state agency to the clerk of court which may have constituted authority to recommend and, to some degree, notice to the decedent's family by an October 18, 1985 letter.

Due to the number and frequency of telephone calls we have received concerning above referenced case, I thought I should advise you of our opinion on certain issued [sic] discussed with us.
* * * * * *
(3). Someone on his behalf should apply for permanent total disability with payments going to a legal guardian and should Jody die as a result of his injuries, all payments should be stopped with balance of award going back to the fund or funds from which award was made.
(4). Since Jody is an unmarried minor with no dependents, there would be not [sic] further death benefits made, other than for funeral expenses.
(5). Jody's mother and/or father can not prove entitlement to dependent parent benefits.
* * * * * *
I have not yet had the chance to review any medical reports so these opinions are based upon which I do have and upon telephone conversations. In no way am I trying to tell the court how to handle this difficult case and I thank you for allowing me to express my opinion.
These statements by the State Fund become significant when the denial-objection decision was furnished on May 17, 1988, which first stated an objection based on the expiration of the statute of limitations and then added "[a]lso, there has been no proof of paternity in this case."
If a decision on the basis of estoppel proved available, estoppel based on the communications from the State Fund might have significance. Obviously, the State Fund creates that kind of question if it says that a claim is objectionable because there is no determination of parentage until the statute of limitation expires and then raises the statute of limitation to defeat the claim after parentage has been determined. An argument can be made that if the State Fund objects to the claim until parentage is determined, that once parentage is determined and for some reasonable time thereafter, the claim can be made. At issue, then, is whether parentage must be determined in the worker's compensation proceeding or may first be determined in the statutory parentage process. Neither party has briefed nor argued estoppel by act of the state agency itself.
[7] The State Fund cites W.S. XX-XX-XXX(a) and XX-XX-XXX. Those statutes were found in the prior law and are similar but not identical with the present provisions. The 1986 recodification, effective June 23, 1986, is to be applied procedurally as long as a substantive right is not adversely affected. Owens v. Superior Court of Los Angeles County, 52 Cal.2d 822, 345 P.2d 921 (1959). See also Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953, reh'g denied 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958) and 73 Am.Jur.2d Statutes § 354 at 490 (1974). Processing was handled under the hearing examiner administrative structure that was first created by the 1986 enactment. Bemis v. Texaco, Inc., 400 P.2d 529, reh'g denied 401 P.2d 708 (Wyo. 1965) is not inapposite since the issue there concerned substantive rights and not procedural provisions changed by a newly enacted statute.
[8] See Note, The Unconstitutionality of Medical Malpractice Statutes of Repose. Judicial Conscience Versus Legislative Will, 34 Vill.L.Rev. 397 (1989).
[9] Statutes of repose and statutes of limitations are often confused. They are similar in that both prescribe the time period within which a plaintiff may commence his suit. The distinguishing feature between the two is the time at which the respective periods commence. Generally, in medical malpractice actions, if the plaintiff's cause of action accrues and the statutory period commences when the injury occurs or, as is most often the case, when the plaintiff is or should be aware that he has been injured, the statute is properly termed a statute of limitations. If the statutory period commences upon the occurrence of an event, regardless of when the injury occurs, at a time when the plaintiff may or may not be aware of any injury, the statute is properly termed a statute of repose. In the latter case the repose period commences upon the occurrence of an event, such as the negligent act or omission of the health care practitioner, but the injury caused by this act or omission may be latent and therefore not manifest itself until after the statutory period has elapsed. Consequently, the plaintiff's claim may be barred before he is or should be aware that he has been injured or has a claim. Note, supra n. 8, 34 Vill.L.Rev. at 400-01 (footnotes omitted). See Com. v. Owens-Corning Fiberglass Corp., 238 Va. 595, 385 S.E.2d 865 (1989) (differentiation noted when effecting governmental entities). See also McGovern, The Variety, Policy and Constitutionality of Product Liability Statutes of Repose, 30 Am.U.L.Rev. 579 (1981). Phillips, 611 P.2d 821 is not directly defined in designation to be a statute of repose case, although in terminology, the differentiation is recognized. "[T]he statute in question, * * *, is not a statute of limitations but is a grant of immunity from suit." Id. at 831. Cases this court cited generally for precedential support include some of the more influential statute of repose decisions, including Overland Const. Co., Inc. v. Sirmons, 369 So.2d 572 (Fla. 1979); Fujioka v. Kam, 55 Haw. 7, 514 P.2d 568 (1973); Skinner v. Anderson, 38 Ill.2d 455, 231 N.E.2d 588 (1967); Saylor v. Hall, 497 S.W.2d 218 (Ky. 1973); Pacific Indem. Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548 (Minn. 1977); Loyal Order of Moose, Lodge 1785 v. Cavaness, 563 P.2d 143 (Okl. 1977); Broome v. Truluck, 270 S.C. 227, 241 S.E.2d 739 (1978); and Kallas Millwork Corp. v. Square D Co., 66 Wis.2d 382, 225 N.W.2d 454 (1975). Compare Reynolds v. Porter, 760 P.2d 816 (Okl. 1988), where that court determined the statute was a statute of limitation without the benefit of the discovery rule and was also unconstitutional under the Oklahoma Constitution.
[10] This legal duty is established by both civil and criminal remedies. See W.S. 14-2-104, right to bring paternity actions; effect of agreements; proceedings when child is not yet born; W.S. 14-2-113, effect and contents of judgment or order; new birth certificate; determination of support; continuing jurisdiction; W.S. 14-2-204, liability for support; right of action; venue; service; measure of recovery; remedy is cumulative; execution; W.S. 20-3-101 through 20-3-104, desertion of wife or children; and W.S. 20-6-101 through 20-6-401, child support enforcement as a list which is not exhaustive and relates in some fashion to support of children.
[11] Respondent argues that the State Fund raised the dependency issue first on appeal. "`Our rule is that in the absence of fundamental error affecting a substantial right of the appellant or involving the jurisdiction of the court, we do not consider questions sought to be raised for the first time on appeal.'" Hyde v. State, 769 P.2d 376, 381 (Wyo. 1989) (quoting Jahnke v. State, 692 P.2d 911, 928 (Wyo. 1984)). Whether or not the question was properly raised, we address the subject to determine that discrimination cannot be justified between children based on the marital status of the parents as the constitutional concept of both Heather and Bowers. Initial action of the State Fund when it suggested existence of a requirement to establish parentage for authentication of a claim is compatible with our recognition of the child's constitutional interest involved in determination of the familial relationship.
[1] W.S. XX-XX-XXX provided in its entirety at the time this matter was before the Agency:

"(a) For the purposes of this act, the office of independent hearing officers is created. The chief hearing officer shall be a qualified member of the Wyoming state bar, appointed by the governor and shall serve at the pleasure of the governor. The governor may appoint additional hearing officers who are qualified members of the Wyoming state bar to serve as necessary throughout the state. An independent hearing officer shall conduct contested cases under this act in accordance with this section. The division shall provide office space and materials required by the hearing examiners.
"(b) If either the division or the employer object to the right of the employee to receive compensation, as to the amount of compensation or to amounts or procedures claimed for medical and health care, or at the request of the employee, the case shall be immediately referred to a hearing examiner who shall set the case for hearing at the earliest opportunity. The case shall be determined by a hearing examiner following the contested case procedures of the Wyoming Administrative Procedure Act. Appeals may be taken from the decision by any party to the contested case to the district court as provided by the Wyoming Administrative Procedure Act. Hearings may be held in any area of Wyoming giving consideration to the convenience of the employee, employer and division.
"(c) All written reports, claims and other documents filed with the clerk of court and the division shall be considered as pleadings in the case. The attorney general's office shall represent the division in all contested cases. The hearing examiner has exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under this act. All court costs shall be paid from the worker's compensation account if the judgment is in favor of the employer or the division. If judgment is against the employer and the employer contested the claim without being joined in the contest by the division, the court costs shall be paid by the employer. When the employer or division prevails, the court costs shall not affect the employer's experience rating.
"(d) The hearing examiner may appoint an attorney to represent the employee or claimants and may allow him a reasonable fee for his services at the conclusion of the proceeding. The attorney shall be paid according to the order of the hearing examiner either from the worker's compensation account, from amounts awarded to the employee or claimants or from the employer. If the employer or division prevails, the attorney's fees allowed shall not affect the employer's experience rating." (Emphasis added.)
[2] W.S. 16-3-112 provides in its entirety:

"(a) If not otherwise authorized by law there shall preside at the taking of evidence in all contested cases the statutory agency, one (1) or more members of the body which comprises the agency, or an employee of the agency or an employee of another agency designated by the agency to act as presiding officer. The functions of all those presiding in contested cases shall be conducted in an impartial manner. Any officer shall at any time withdraw if he deems himself disqualified provided there are other qualified presiding officers available to act.
"(b) Officers presiding at hearings shall have authority, subject to the published rules of the agency and within its power to:
"(i) Administer oaths and affirmations;
"(ii) Issue subpoenas;
"(iii) Rule upon offers of proof and receive relevant evidence;
"(iv) Take or cause depositions to be taken in accordance with the provisions of this act [§§ 16-3-101 through 16-3-115] and the rules of the agency;
"(v) Regulate the course of the hearing;
"(vi) Hold conferences for the settlement or simplification of the issues;
"(vii) Dispose of procedural requests or similar matters;
"(viii) Make recommended decisions when directed to do so by the agency; and
"(ix) Take any other action authorized by agency rules consistent with this act.
"(c) In all contested cases to the extent that it is necessary in order to obtain compliance with W.S. 16-3-111 the agency (excepting county and municipal agencies and political subdivisions on the county and local level) may request the office of the attorney general to furnish to the agency such personnel as may be necessary in order for the agency to properly investigate, prepare, present and prosecute the contested case before the agency. The attorney general upon the receipt of the request shall promptly comply with same with no charge being made against the requesting agency's appropriation other than for travel and per diem expenses.
"(d) To the extent an agency utilizes an employee of another agency (other than the staff of the attorney general) to preside at a hearing or otherwise the salary of the employee during the period of the employment and the expenses incurred by the employee shall be charged against the appropriation of the using agency.
"(e) When required by law an agency shall adopt rules and regulations providing a procedure for the use and the selection of an administrative hearing officer. An agency shall not delegate the authority to make final decisions to an independent administrative hearing officer unless required by law." (Emphasis added.)
The clause in W.S. 16-3-112(a), "If not otherwise authorized by law" and the last sentence in W.S. 16-3-112(e), "An agency shall not delegate the authority to make final decisions to an independent administrative hearing officer unless required by law," refer to authorization by constitutional means. The language "when directed to do so by the agency" in W.S. 16-3-112 allows the agency to act on the matter without a recommendation from the presiding officer.
[3] For example, the Constitution of the United States does not contain such exact or specific prohibition. It provides in pertinent part: "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, Sec. 1; "The executive Power shall be vested in a President of the United States of America," Art. II, Sec. 1; "The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Art. III, Sec. 1.
[4] "Agency" is defined in the Wyoming Administrative Procedure Act, § 16-3-101(b)(i):

"`Agency' means any authority, bureau, board, commission, department, division, officer or employee of the state, a county, city or town or other political subdivision of the state, except the governing body of a city or town, the state legislature and the judiciary[.]"
[5] See supra note 1.
[6] Initially, the judiciary (district court) determined the matters referred to in W.S. XX-XX-XXX(b). In 1986, W.S. XX-XX-XXX was enacted. In 1989, among other amendments, an amendment to the act changed the first sentence from "[f]or the purposes of this act, the office of independent hearing officers is created," to "[f]or the purposes of this act, the office of independent hearing examiners is created as a separate and independent agency funded under the worker's [sic] compensation account." (Emphasis added.)
[7] See supra note 1.
[8] This court has applied Article 2, Section 1 of the Wyoming Constitution in other cases, e.g., the judicial branch cannot determine the qualifications for membership in the House of Representatives, such is a legislative function. State ex rel. Schieck v. Hathaway, 493 P.2d 759 (Wyo. 1972). The legislature, not the judiciary, determines that which is a crime and the parameters for punishment therefor. Hopkinson, 664 P.2d 43; The legislature cannot prohibit allegations of dollar amount of damage in an ad damnum clause of a pleading. It is the Supreme Court's function to prescribe form and content of pleadings. White v. Fisher, 689 P.2d 102 (Wyo. 1984). It is a violation of the separation of powers doctrine for the courts to collect drivers' licenses in traffic matters and to issue temporary ones. Such is an executive branch function. Holtz 674 P.2d 732. The court cannot restore civil rights by expunging a criminal record. The power of pardon is for the executive branch.
[9] W.S. XX-XX-XXX(a) provided in its entirety at the time this matter was before the Agency:

"(a) An award for compensation involving an injury which is the result of a single brief occurrence rather than occurring over a substantial period of time shall not be made unless in addition to the proper and timely filing of the reports of the accident, an application or claim for award is filed within one (1) year after the date the accident occurred or for injuries not readily apparent, within one (1) year after discovery of the injury by the employee. The report of accident is not a claim for compensation."
W.S. XX-XX-XXX(c) now recognizes the different types and natures of allowable benefits under the one year limitation period applying separately to the different categories. W.S. XX-XX-XXX provides:
"(a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional medical and disability benefits or for a modification of the amount of benefits on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud.
"(b) Any right to benefits shall be terminated and is no longer under the jurisdiction of this act if a claim for any medical or disability benefit is not filed with the division within the four (4) year limitation prescribed under subsection (a) of this section.
"(c) A claim for medical benefits which would otherwise be terminated under subsection (b) of this section and barred under W.S. XX-XX-XXX(a) and (b) may be paid by the division if the claimant:
"(i) Submits medical reports to the division substantiating his claim;
"(ii) Proves by competent medical authority and to a reasonable degree of medical certainty that the condition is directly related to the original injury; and
"(iii) Submits to an examination by a health care provider selected by the division and results of the examination validate his claim."
[10] W.S. XX-XX-XXX provides:

"If an injured employee is mentally incompetent or a minor, or where death results from the injury and any of his dependents are mentally incompetent or minors, at the time when any right or privilege accrues under this act, no limitation of time provided for in this act shall run so long as the mentally incompetent or minor has no guardian."
[11] See supra note 10.
[12] W.S. XX-XX-XXX(a)(iii) provides:

"`Child' means any unmarried minor or physically or mentally incapacitated individual receiving court ordered support or substantially all of his financial support from the employee at the time of injury or death of the employee and includes an adopted child, stepchild, posthumous child or acknowledged illegitimate child but does not include a parent or spouse of the employee[.]"
[13] Before the office of hearing examiner was established, workers' compensation contested cases were handled by the district court, and the issue of paternity could have been handled by it together with other issues pertaining to the claim.
[14] See supra note 12.
[15] See supra note 12.